JOSEPH LANDE & SON, INC., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. WELLSCO REALTY, INC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Submitted May 28, 1943—Decided November 4, 1943.

For the appellant and cross-respondent, *Samuel Rosenblatt*.

For the respondent and cross-appellant, *Warren Dixon, Jr.*

The opinion of the court was delivered by

HEHER, J. The complaint is in four counts, only two of which are involved in this appeal. The trial judge directed a verdict for plaintiff on the third count and a verdict for

defendant on the fourth count. These rulings constitute the subject-matter of the cross-appeals.

By the third count, a subcontractor pleads a cause of action against the owner on a stop-notice served and filed on October 14th, 1941, under *R. S.* 2:60–116; 2:60–118. The defendant owner interposed, *inter alia,* the plea of *nil debet;* and one of the questions mooted at the trial was whether the owner had made advance payments for which it was liable under *R. S.* 2:60–124. The trial judge resolved it in the affirmative as a matter of law and therefore directed a verdict for plaintiff; and therein he fell into error.

The principal contract was made on May 29th, 1941. It provided for the construction of four duplex houses (eight families) and attached garages for the defendant owner on or before the ensuing September 1st. It was filed on June 2d, 1941, pursuant to section 2:60–115. The contract price was $30,000, subject to an allowance of $5,064 for certain materials and equipment to be supplied by the owner. There was a provision for "progress payments." The owner undertook to pay the contract price as follows: "On or about the 1st and 15th day of each month 85 per cent. of the value, based on the contract prices, of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to that day of that month, as estimated by the architect, less the aggegrate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to 85 per cent. of the contract price. Final payment shall be due 30 days after substantial completion of the work provided the work be then fully completed and the contract fully performed."

By contract with the general contractor, plaintiff agreed to install the heating units for $2,160. It maintains that it fully performed the subcontract; and it seeks the recovery of $1,660, the balance of the contract price remaining unpaid.

The general contractor discontinued work before full performance of its contract; and the buildings were completed by another contractor engaged by the owner. The proofs established that the moneys paid to the general contractor, and for completion after its default, are in excess of the con-

tract price; and the question is whether there were payments to the general contractor "in advance of the terms" of the contract.

Evidence was adduced tending to show that about 80 per cent. of the work provided for in the main contract had been done when the general contractor abandoned the contract; and it was the trial judge's view that, since the owner had made payments in excess of 80 per cent. of the contract price, less the retained percentage, there were advance payments for which it was debarred from credit in this action under sections 2:60–119 and 2:60–124, *supra*. Plaintiff's contention is that, at the time of the service and filing of the stop-notice, the general contractor was entitled to but 80 per cent. of the contract price, less the retained percentage of 15 per cent., or the net sum of $16,956.48, thus making an over-payment more than sufficient to cover its claim. The owner proved by its architect and other witnesses that payments were in fact made on the basis of 85 per cent. of the cost of labor and materials; and this testimony stood uncontroverted.

Thus, the question is one of construction and intent as manifested in the contract. Is it the fair purport of the terms used that the installment payments should have been made on the basis of percentage of the whole work completed? We find no such intendment. As was true of the contract considered in the case of *Post* v. *Geldziler*, 105 N. J. L. 370, nothing was said about "percentage of completion." In that case, it was provided that no payments should be made "for more than 85 per cent. of the work completed, materials furnished and actually installed in the building;" and this court declared that "if the contractor agrees to a lump sum on a losing basis, he may still, under this clause, legitimately obtain certificates for eighty-five per cent. of fair cost of work done and materials furnished, and exhaust the contract price before the work is completed." The clause was construed to have reference to the "cost of the work" done, irrespective of the relation of the work done to the entire undertaking.

But it is said in opposition that the contract in the case at hand provides for payments of "85 per cent. of the value,

*based on the contract prices,* \* \* \* as estimated by the architect," and "upon substantial completion of the entire work, a sum sufficient to increase the total payments to 85 per cent. *of the contract price;"* and that thereby "the 85 per cent. payments are tied in directly and specifically to the contract price," and therefore the case of *Post* v. *Geldziler, supra,* is not apposite. But we think the case at bar is stronger for the owner than was the cited case. There, the clause read: "\* \* \* 85 per cent. of the *work completed, materials furnished and actually installed* in the building." Here, the term "contract prices" is in the plural and plainly has reference to the price to the contractor of labor performed and materials furnished in the work done rather than the whole contract price. Moreover, the price of "materials suitably stored at the site" of the construction work is also to be considered. The last clause thus cited by respondent evidently refers only to the final payment, if the contract price is not exhausted before full performance of the contract, and it does not thereby become inoperative. The language employed is obviously not appropriate to the indubitable expression of a purpose to render installment payments on the basis of "percentage of completion." There was no evidence, in aid of interpretation, of the customary practice under such a clause. The engineer who acted as inspector of the construction work, on behalf of a bank which had loaned money on the project, testified that he "estimated the value of the work completed and its relation to the entire job," but he later said he considered "the value of the work done" and that the whole contract price did not enter into his calculations.

Thus, the ruling of the trial judge on the third count was based upon a misconception of the contract, and so was erroneous.

In this view, we have no occasion to determine whether the sum claimed in the stop-notice was in excess of the amount actually due, and the stop-notice was therefore void.

And we are of opinion that the trial judge erred in directing a verdict for defendant on the fourth count. The evidence adduced in relation to the cause therein pleaded raised a factual issue.

The allegation is that defendant requested plaintiff "to complete its contract" with the general contractor "by making installation of the six remaining heating units in the premises" under construction; that plaintiff declined to do so because of the general contractor's failure to pay for the work already done; that defendant thereupon promised that if plaintiff would install the remaining units it would pay the plaintiff the balance due under its subcontract; and that plaintiff installed the units and "completed its contract" in reliance upon this promise.

On September 24th, 1941, only two heating units had been installed. The general contractor had then defaulted in the payment of approximately $1,000 due under the subcontract. Because of this default, plaintiff refused to proceed with the work. There was testimony that, in this situation, defendant's president requested plaintiff to install the remaining six units; that plaintiff's president directed attention to the default and said, "If you will guarantee us the money, we will send the units to the job," and that defendant's president replied, "As soon as you put the units on the job the money is waiting for you;" that plaintiff then had six units moved to the construction site, where the promise of payment was reiterated by defendant's president to plaintiff's secretary-treasurer, and thereupon the installation work was completed.

This evidence, if founded in truth, was in the light of all the circumstances sufficient to sustain the promise alleged in the complaint. Defendant offered a different version of the transaction. It was that plaintiff was told merely that there was sufficient money due the general contractor to cover its claim, and that plaintiff should resort to that fund. And the trial judge concluded that there "was not a promise of payment, but a promise that he would see that payment was made." But it was for the jury to determine whether defendant undertook to pay the moneys remaining due upon plaintiff's contract, if it completed the installation of the heating units. Compare *Paul & Hoffman* v. *Haber,* 88 *N. J. L.* 379.

It is said that since the conversation relied upon by plaintiff took place by telephone, and the voice of defendant's representative was not "recognized" by plaintiff's president, the

evidence was inadmissible. But, as stated, there was evidence that the promise was later reiterated by defendant's president on the site of the work. And the latter admitted the telephone conversation, but insisted that it was not of the purport adverted to. He said he merely stated that he "believed there were ample funds still available to be disbursed under the mortgage;" that two payments would shortly be due to the general contractor, and "there were funds to disburse to them," and that if plaintiff "would go right after" the contractor, "there was certainly enough money there * * * to pay him."

It is urged also that plaintiff was under a legal duty to perform its subcontract, and therefore the promise was a *nudum pactum* and unenforceable. The point is not well made.

True, a promise to do what the promisor is already legally bound to do is ordinarily deemed an unreal consideration. *Schaefer* v. *Brunswick Laundry Co.,* 116 *N. J. L.* 268; *Levine* v. *Blumenthal,* 117 *Id.* 23; *affirmed, Ibid.* 426. It is therefore pertinent to inquire whether plaintiff, by reason of the general contractor's default, had been relieved of its contractual obligation to proceed with the work at the time of the making of the owner's alleged promise. In *Magliaro* v. *Modern Homes, Inc.,* 115 *Id.* 151, the contract provided for monthly payments of 80 per cent. of the work done as certified by the engineer; and this court held that the contract was entire and the covenants independent, and that a default in payment of a stipulated installment did not constitute a breach of the contract justifying its abrogation or an abandonment of the work. See, also, *School Trustees of Trenton* v. *Bennett,* 27 *Id.* 513; *Grassman* v. *Bonn,* 32 *N. J. Eq.* 43. But here, it would seem that the contract was severable and divisible. While it provided for a lump sum price, the proofs reveal that it was calculated at the rate of $270 for each of the eight heating units. And the provision for installment payments is ambiguous. Plaintiff agreed to complete the work on or before October 1st, 1941; and the general contractor agreed to pay the price "as follows: First payment, 85 per cent. twice monthly;" and "The last

and final payment to be made within 30 days after all the work shall be completed * * *."

The question of dependency of covenants is in the ultimate analysis one of construction and intention; and, in the absence of a clear indication of a contrary understanding, the tendency of the modern decisions is to consider reciprocal promises as mutually dependent. The order in which the things are to be done is ordinarily viewed as of controlling significance. *Corn Exchange National Bank and Trust Co. v. Taubel,* 113 *N. J. L.* 605. Covenants and stipulations in a contract may be in part dependent and in part independent, according to their nature and order of performance. Where it is evident that the design of a provision for installment payments in a construction contract was to facilitate the contractor's financing of the operation, the stipulation must needs be deemed dependent. A substantial compliance with a provision for advance payments is a condition precedent to the contractor's obligation to proceed. *Guerini Stone Co. v. P. J. Carlin Construction Co.,* 248 *U. S.* 334; 39 *S. Ct.* 102; 63 *L. Ed.* 275; *Williston on Contracts (Rev. Ed.),* § 848; 17 *C. J. S.* 797–799.

But however this may be, plaintiff was under no obligation to the owner to fulfill its subcontract; and, while it is the generally accepted doctrine that the performance of or a promise to perform a pre-existing obligation under a contract with the promisee is not a sufficient consideration, there is a contrariety of view as to whether the principle is applicable where the duty arises under a contract with a third person. This is a vexed question that has evoked much learning and subtle distinctions. *Vide DeCicco v. Schweizer,* 221 *N. Y.* 431; 117 *N. E. Rep.* 807; *Abbott v. Doane,* 163 *Mass.* 433; 40 *N. E. Rep.* 197; *Briskin v. Packard Motor Car Co.,* 269 *Mass.* 394; 169 *N. E. Rep.* 148; *Williston on Contracts (Rev. Ed.),* §§ 131, *et seq.* In England, it is now the established rule that the performance of a contractual duty previously undertaken with a third person is sufficient consideration if it is beneficial to the defendant. *Shadwell v. Shadwell,* 30 *L. J. C. P. (N. S.)* 145; *Scotson v. Pegg,* 6 *H. & N.* 295; *Chichester v. Cobb,* 14 *L. T. Rep. (N. S.)* 433.

While this seems to be the minority view in this country, it is in accordance with the modern trend. *A. L. I. Contracts,* § 84 (d); *Williston on Contracts (Rev. Ed.),* §§ 131, *et seq.* The principle was applied by this court in *Paul & Hoffman* v. *Haber, supra.* Consideration is, in effect, the price bargained for and paid for a promise. A very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake. Whatever consideration a promisor assents to as the price of his promise is legally sufficient consideration. *The Coast National Bank* v. *Bloom,* 113 *N. J. L.* 597.

Here, at the time of the asserted promise, the general contractor was in substantial default; and plaintiff under a claim of right had refused to complete the work. Completion by plaintiff would undoubtedly constitute a service to the owner above and beyond that obtainable elsewhere, for the needed equipment and the installation facilities were at hand and the apartments would be the more quickly made available for waiting tenants. The protection of defendant's own interest afforded the requisite consideration.

And if there was a *bona fide* dispute as to plaintiff's contractual duty in the circumstances to render full performance of the subcontract, there was in that respect also a good consideration for the owner's promise to pay the contract price on completion of the work. The contrary doctrine would be in effect an adherence to technical niceties and refinements at the sacrifice of liberty of contract.

The judgment is accordingly reversed as to both counts, and a *venire de novo* awarded; costs to abide the event.

*For affirmance*—DONGES, COLIE, DILL, JJ. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.