800 A.2d 271 (2002)
352 N.J. Super. 476
Richard and Janet OSCAR, Plaintiff-Respondents,
v.
Chris SIMEONIDIS t/a Midtown Diner, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued Telephonically February 25, 2002.
Decided July 2, 2002.
*272 Laurence H. Olive, Montclair, argued the cause for appellant.
*273 Steven D. Plokfer, argued the cause for respondents.
Before Judges PRESSLER, CIANCIA and COLEMAN.
The opinion of the court was delivered by COLEMAN, J.S.C. (temporarily assigned).
The dispute in this matter arises out of a lease agreement between defendant Chris Simeonidis, the tenant, and plaintiffs Richard and Janet Oscar (hereinafter referred to as Oscar), the landlord. The trial court held a purported amendment to the lease agreement unenforceable for lack of consideration and there after determined fair market rental value as the basis for renewal of the lease under an option exercisable by the tenant. The tenant appeals. Because we disagree with the trial court's holding that the amendment was unenforceable, we reverse the order of the trial court and remand the matter for a determination of the rental pursuant to the formula contemplated by the amendment. We affirm that portion of the trial court's order that determined the tenant shall be responsible for payment of real estate taxes in addition to the rental payable upon renewal.
The parties' relationship began in early 1991 when defendant Simeonidis purchased from Nick Barrise a restaurant business located in a two-story building owned by plaintiff in Montclair. As part of that purchase transaction defendant took over the lease agreement Barrise had with plaintiff. The lease agreement was for a ten-year term, beginning January 1, 1990 and ending December 31, 1999. The agreement specified "first year rent $2,500 per month to be increased annually at the rate of C.P.I. (consumer price index) with a minimum annual increase of 5%." Paragraph 32 of the lease agreement also provides: "Tenant to pay real estate taxes and any increases therein on a monthly basis, payable to the landlord, and included with the rental payment." Additionally, Paragraph 31 of the lease agreement contains a renewal option which states:
At the termination of the within lease, the tenant is given the first option to enter into a new rental agreement with the landlord. This option will be for two consecutive five year terms with an increase based on fair market rent.
Although the lease agreement recites in Paragraph 29 that it is the full agreement of the parties that "may not be changed except in writing signed by the landlord and the tenant," from the outset the parties deviated from the terms of the agreement.[1] Simeonidis purchased the business from Barrise and assumed the lease in the second year of the term. Oscar charged Simeonidis $2500 inclusive of real estate taxes. According to Oscar, he did this to help Simeonidis develop his business. He also claims he did it as a favor to his friend Barrise. Simeonidis contends Oscar did not increase the rent or make him pay taxes as specified in the lease because the commercial rental market in Montclair was severely depressed. In any event, over the years the rent paid by Simeonidis and accepted by Oscar was below that set forth in the lease agreement. During the final two years of the lease *274 agreement, Oscar increased the rent to $3,150 a month, inclusive of taxes. Simeonidis paid that amount without challenge.
As the ten-year term was about to expire, Oscar sent a renewal letter to Simeonidis offering to continue the lease at a new rent of $5,000, inclusive of real estate taxes. When Simeonidis did not respond to that letter, Oscar sent a time-of-the-essence letter, requesting that Simeonidis either consent to the renewal of the lease at the new rate or surrender the premises. Simeonidis still did not respond. Oscar then filed a complaint seeking possession of the premises and the matter proceeded to trial before the court in a summary action.
The proofs at trial consisted of testimony on the issue of the fair market rental value of the premises. Plaintiff presented an expert, Richard Polton, who gave a detailed market analysis, including historical trends and a comparison of similar rental properties in the area. Polton concluded that the fair market value of the premises was $22 a square foot, or a monthly rent of $5500 given the size of the premises (3000 square feet).[2] He further testified that this amount did not include real estate taxes, which were separately payable by the tenant.
Simeonidis challenged Polton's valuation of the property. He testified that he was responsible for heat, hot water and electricity and that these expenses, averaging around $2000 a month, were beyond what normally would be charged a tenant. Simeonidis further testified he was responsible for all interior repairs to the property and that he had made substantial improvements to the premises. He did not present any expert testimony on fair market value.
At the close of the proofs, it was contemplated that the parties would submit written summations; however prior to the date for such submissions, defendant Simeonidis filed a motion for leave to present additional testimony based upon newly discovered evidence. He had learned of the existence of a document purporting to be an amendment to the lease agreement. The document had been discovered in the files of a third party, J. Roc Associates, which held a note from defendant Simeonidis in connection with his purchase of the restaurant. Pursuant to Paragraph 33 of the lease agreement, "if tenant defaults... Jay Roc Associates has the right to assume all rights and obligations of said lease." The trial court granted defendant's motion to reopen the proofs to permit evidence concerning the purported amendment.
When the proceedings resumed, John Meely, a partner at J. Rock, testified that he had found the document in his file relating to outstanding notes with defendant. Meely testified that his partner, Rocco Caruso, who had passed away several months prior to the trial, had handled the file and that he believed their attorney also had a copy of the document. The document is in letter format, dated March 28, 1991. It contains the signatures of Nick Barrise and Richard Oscar. It reads:
The following is an amendment to the above-mentioned lease [lease dated January 3, 1990 between Richard and Janet Oscar and Nick Barrise on the property located at 12 Church Street, Montclair, N.J. 07042]:

*275 As of this date, the clause in paragraph 31, pertaining to an extension of this lease, which reads "Increases based upon fair market rent" will be changed to read "Increases based upon terms of the original lease."
The amendment thus directed how the rental would be determined almost nine years later in the event the tenant were to exercise the option to renew. The parties intended to revert to a simple mathematical calculation utilizing the formula specified for the rental during the original ten-year term instead of then seeking to ascertain the fair market value.
The recollections of both Barrise and Oscar were sketchy on the subject of the amendment but neither seriously disputed the authenticity of the document. Simeonidis had been unaware of the document. Barrise testified that Oscar prepared the document, brought it to him and they both signed it. Barrise believed that the amendment was related to his selling the business to defendant Simeonidis but he was not certain who had actually requested the amendment. He responded to the following questions posed by the judge:
Q Did that [letter of March 28] change a lease provision that was then in existence? Do you understand the question?
A That's right.
Q Waswas there any benefit to the landlord, Mr. Oscar, from making that change?
A Is there any benefit to Mr. Oscar? I don't think that was thethethe reason. The reason was to get a fairer-fairer lease for the new tenant coming in.
Q Was he simply doing it as a favor to you so you could sell the business?
A I think so, yes.
Oscar testified that he did not recall signing the document, but he did not deny that he had signed it. He just could not remember doing so. When asked whether he had received anything of value for the modification, he responded, well, "no, and that doesn't appear to be the intent of it...." He did not elaborate on what was the parties' intent but did testify that Barrise often paid the rent late. Consequently, he acknowledged that it would have been in his [Oscar's] interest to have a new tenant who would be more likely to pay the rent promptly.
In a written opinion the court concluded, sua sponte, that the amendment purporting to change the rent during the period of any extension from an amount based on fair market rent to an amount based on the terms of the original lease was unenforceable because "[d]efendant presented no evidence that would constitute legal consideration." The court reasoned:
At best, vis a vis defendant, plaintiff testified that perhaps through this change and the sale of the restaurant to defendant, that he might thereafter have a tenant who paid rent regularly. That is not legal consideration; it was what the parties had already committed themselves to do, and the enforcement of an existing obligation does not constitute legally binding consideration.
The court determined that the fair market value of the premises was $5,500 per month, accepting the opinion of plaintiff's expert witnesses with the exception of the value ascribed to an unused mezzanine. It directed the parties to ascertain the amount due and ordered that if defendant refused to pay that amount, judgment for possession would be entered; otherwise, the complaint would be dismissed.
Subsequently, defendant sought clarification as to whether the rent determined by the court was inclusive or exclusive of *276 real estate taxes. The court reiterated that the rent was to be $5,500 per month and clarified that, pursuant to paragraph 32, the taxes were to be included with the rental payment, but are not part of the rental payment. An order dated March 28, 2001 was entered to memorialize these rulings. Defendant appeals that order both as to the rental amount and as to the payment of real estate taxes.
As a basic premise, it is true that "no contract is enforceable ... without the flow of considerationboth sides must `get something' out of the exchange." Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc., 93 N.J. 153, 170, 459 A.2d 1163, cert. denied, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983) (quoting Friedman v. Tappan Development Corp., 22 N.J. 523, 533, 126 A.2d 646 (1956)). That premise applies equally to agreements to modify existing contracts as to new contracts.[3]County of Morris v. Fauver, 153 N.J. 80, 100, 707 A.2d 958 (1998). See also Ross v. Orr, 3 N.J. 277, 282, 69 A.2d 730 (1949); Levine v. Blumenthal, 117 N.J.L. 23, 26, 186 A. 457 (Sup.Ct.1936), aff'd, 117 N.J.L. 426, 189 A. 54 (E. & A.1937).
By the same token, "[w]hatever consideration a promisor assents to as the price of his promise is legally sufficient consideration." Coast National Bank v. Bloom, 113 N.J.L. 597, 602, 174 A. 576 (E. & A.1934). "Mutual promises are sufficient consideration one for the other. They are reciprocal considerations for each other." Id. at 604, 174 A. 576. It has been long accepted that the value given or received as consideration need not be monetary or substantial:
Consideration is, in effect, the price bargained for and paid for a promise. A very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake. Whatever consideration a promisor assents to as the price of his promise is legally sufficient consideration. Coast National Bank v. Bloom 113 N.J.L. 597, 174 A. 576, 95 A.L.R. 528.

[Joseph Lande & Son, Inc. v. Wellsco Realty, Inc., 131 N.J.L. 191, 198, 34 A.2d 418 (E. & A.1943).]
Any consideration for a modification, however insignificant, satisfies the requirement of new and independent consideration. For example, payment of an existing rent obligation one day in advance of the due date would suffice, slight as that consideration would be. Haynes Auto Repair Co. v. Wheels 115 N.J.L. 447, 448, 180 A. 836 (E. & A.1935). "If the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation." Shebar v. Sanyo Business Systems Corp., 111 N.J. 276, 289, 544 A.2d 377 (1988) (citing Restatement (Second) of Contracts § 79 (1979)).
Oscar and Barrise entered into the amendment, an agreement to modify the basis for determining rent in any renewal of the lease agreement. The trial court concluded that because Barrise testified he believed Oscar had signed the *277 amendment "as a favor" to help Barrise sell the business and because it was what the parties had already committed themselves to do, this amendment lacked consideration. Such a view is too narrow and overly exacting. Moreover, the opinion of one or both of the parties as to whether anything of value had been given or received for the modification may be informative but it is not dispositive. The determination of whether value has been given or received must ultimately be gauged by an objective examination of all of the relevant circumstances.
In their original lease agreement, the parties had expressly preserved their right to modify the lease agreement so long as the terms of the modification were (1) in writing and (2) signed by the landlord and the tenant. The amendment complied with those requirements of form. County of Morris v. Fauver, supra, 153 N.J. at 99, 707 A.2d 958 ("Parties to an existing agreement may, by mutual assent, modify it" and "such modification can be proved by an explicit agreement to modify it or... by the actions and conduct of the parties, so long as the intention to modify is mutual and clear").[4]
Here, the parties adopted a formula that would permit them and any other interested person to determine the rental upon renewal of the lease by reference to objective, readily ascertainable criteria. This is itself valuable consideration sufficient to sustain the modification because the mutual agreement to abide by such a formula has the capacity to remove an element of uncertainty from the parties' future legal relationship. "It is a principle, almost universally accepted, that an act or forbearance required by a legal duty owing to the promisor that is neither doubtful nor the subject of honest and reasonable dispute is not a sufficient consideration." Levine v. Blumenthal, supra, 117 N.J.L. at 27, 186 A. 457 (citing Williston on Contracts (Rev. Ed.) §§ 103 b, 120, 130; American Law Institute, Contracts § 76; Anson on Contracts (Turck Ed.) Pp. 229, 234 et seq.). The corollary of that principle is that where a right or legal duty owing to the promisor is doubtful or the subject of honest and reasonable dispute, the clarification of such right or duty will constitute good and valuable consideration.
The amendment was executed some nine years before the option to renew was to be exercised. Although Oscar testified he signed the amendment as a favor to Barrise, neither party could have known who would actually benefit from the modification. If, as Simeonidis contended, the commercial real estate market was severely depressed at the time of the execution of the amendment or if, as was clearly possible, the market thereafter were to decline and remain in a state of decline, Oscar might have received the greater benefit of the bargain. The modification was not, as the trial court perceived, simply a free promise by Oscar to forego some benefit he was entitled to receive under the agreement. There was no fixed sum to which he was entitled. The parties, by virtue of their amendment adopting an already familiar formula, provided definition and predictability to an aspect of their future legal relationship that was otherwise ambiguous and undetermined.
*278 "Fair market rental" is not a self defining term. Obviously, we have recognized that the fair market rental value of a property can be determined even if the lease fails to articulate any guidelines or standards, but such a determination can be problematic. See, e.g., P.J.'s Pantry v. Puschak, 188 N.J.Super. 580, 584-85, 458 A.2d 123 (App.Div.1983). Fair market value has been defined as the price which a willing buyer would offer and a willing seller would accept. City of Trenton v. Lenzner, 16 N.J. 465, 476, 109 A.2d 409 (1954), cert. denied, 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955). Thus, all of the considerations that would influence a willing buyer and willing seller in making their decisions are relevant to a determination of fair market value. Village of South Orange v. Alden Corp., 71 N.J. 362, 368, 365 A.2d 469 (1976).
When an option becomes exercisable, it is not unusual that the parties are not able to agree on a fair market rental or value. As a consequence they must resort to consultants, appraisers or other experts. If a consensus still cannot be achieved, the parties find themselves subject to the substantial expense, strain and attendant delay of litigation. So viewed, the benefit of a rational and acceptable formula to define the rights and duties of the parties is tangible indeed. There is a mutual benefit, including an economic benefit, to the parties where they can bring a measure of order to their affairs by removing or reducing future uncertainty or doubt from their dealings.
Undoubtedly, one of the primary objectives for the amendment in the case now before us was either to assist Barrise in the sale of his business or to assist Simeonidis in his effort to obtain financing. That does not negate the benefit to both landlord and tenant derived from the clarification of the rental value of the lease during any renewal. The added benefit to the landlord of avoiding a vacancy as a consequence of the impending failure of the business of the outgoing tenant was also a sufficient consideration to support the modification of the agreement upon mutual assent. There is no claim or suggestion that Barrise misrepresented his circumstances or contrived to deceive Oscar to induce the amendment of their agreement. They both "got something out of the exchange." In short, we find on the existing record that there was consideration for the amendment to the lease agreement and that the amendment is enforceable.
On the other hand, we reject the tenant's contention that the rental amount for the renewal term should be limited to a five percent increase over the rent actually charged at the expiration of the original lease term, rather than the amount derived by calculating the specified rental increases over the life of the lease. The concessions made by the landlord in accepting a rent different from that called for in the lease agreement constituted a waiver as to those payments for which the lower rent was accepted when due, but such prior concessions do not constitute a waiver of terms yet to be fulfilled. See, e.g., Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 129, 228 A.2d 674 (1967); Van Allen v. Board of Commissioners of Twp. of Bass River, 211 N.J.Super. 407, 410, 511 A.2d 1243 (App.Div. 1986). Based on the plain language of the amendment, as well as the attendant circumstances, the rental for the renewal term was to be calculated by applying the formula set forth in the original lease, namely, by adding yearly increases over the initial base rent of $2,500 at the rate of CPI or at the minimum rate of five percent per year. It remains for the parties and the court below to determine whether *279 the C.P.I. exceeded five percent in any year during the term of the lease. If not, the renewal rate will be fixed by adding to the base rent five percent per year over the ten year term.
The argument that the trial court had no jurisdiction over the issue of real estate taxes is plainly without merit. Even though no specific prayer for relief on the tax issue was stated in plaintiff's complaint, it was clearly raised by plaintiff when he opposed defendant's request for a stay of the court's ruling. The parties were afforded an opportunity to present proof as to whether or not real estate taxes were already incorporated into the rent level to be applied to the renewal period. Rule 4:9-2 provides in pertinent part:
When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order.
Defendant did not object to the trial court receiving proofs on the issue of fair market rental value of the property and the consideration of fair market value by the court appropriately encompassed the issue of whether rent would be inclusive or exclusive of real estate taxes. Plaintiff's expert testified at trial that the rental amount he determined to be fair market rent was exclusive of taxes. More fundamentally, the lease agreement contains a separate provision relating to the real estate taxes. That provision controls. We are satisfied that on this issue the court's ruling was proper and correct.
The order of the trial court is reversed in part and affirmed in part. The matter is remanded for a determination as to the effect of the C.P.I. on the calculation of the rental amount based upon the formula incorporated by the amendment to the lease agreement.
NOTES
[1] For example, Paragraph 3 of the lease agreement provides that the tenant may not without the landlord's written consent assign the lease, sublet all or part of the rental space or permit any other person or business to use the rental space. The record does not reflect either a formal agreement or written consent from the landlord. Simeonidis' name was simply added to the lease agreement when he purchased the restaurant business from Barrise.
[2] The expert had also examined the second floor of the building, which defendant had used as an apartment, and concluded that the second floor at 1200 square feet was worth $10 a square foot. Since defendant no longer occupies or utilizes this space, it is not the subject of this appeal.
[3] In sales transactions this premise has been abrogated. Under the Uniform Commercial Code, as enacted in New Jersey, there is no requirement of new and additional consideration to support the modification of an agreement. The applicable provision, N.J.S.A. 12A:2-209(1) explicitly states "An agreement modifying a contract within this chapter needs no consideration to be binding."
[4] The Court in County of Morris v. Fauver, supra, 153 N.J. at 100, 707 A.2d 958 observed that the County and the Department of Corrections never clearly expressed a mutual intention to modify their contract, nor did they demonstrate knowledge and acceptance of the other party's expressed intentions. By contrast, the intention of Barrise and Oscar to modify the basis for rentals in any extension is mutual and clearly expressed. It is expressed in a writing signed by both.