**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1250-17T3

CAM TRUST, a New Jersey Trust,

    Plaintiff- Respondent,

v.

REVERE HIGH YIELD FUND, LP,
a Delaware Limited Partnership,

    Defendant-Appellant.

_____

        Argued October 29, 2018 – Decided November 7, 2018

        Before Judges Haas and Sumners.

        On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2558-16.

        Malcolm S. Gould argued the cause for appellant (Silverang Donohoe Rosenzweig & Haltzman, LLC, attorneys; Malcolm S. Gould, on the brief).

        Shawn D. Edwards argued the cause for respondent (Maselli Warren, PC, attorneys; Shawn D. Edwards, of counsel and on the brief).

PER CURIAM

Defendant Revere High Yield Fund, LP appeals from the Law Division's September 29, 2017 orders granting plaintiff CAM Trust's motion for summary judgment, denying defendant's cross-motion for summary judgment, and ordering defendant to pay plaintiff $102,920.26 it collected in violation of a modification of a commercial loan negotiated by the parties. We affirm.

The material facts of this case are fully detailed in Judge Mark A. Troncone's comprehensive written decision. Therefore, we recite only the most salient facts from that decision and, like Judge Troncone, view them in the light most favorable to defendant, the non-moving party. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

On December 4, 2014, plaintiff executed and delivered a Term Note and Term Loan and Security Agreement (the Term Loan or loan) to defendant to evidence a loan in the principal amount of $3.5 million. The Term Loan provided for monthly payments of interest only, with a maturity date of March 30, 2016. Interest was set at 12% per year. To secure the loan, plaintiff executed and delivered mortgages on four properties, including one property in Lambertville and another in Barnegat. The Term Loan further provided that

plaintiff could extend the maturity date to June 30, 2016 if it met the conditions set forth in the loan documents.

With particular relevance to the issues involved in the present appeal, Section 8.01(a) of the Term Loan provided that if plaintiff failed to make a monthly payment within five days of its due date, this would constitute a default of its obligations. In the event of a default, Sections 1.01 and 2.08 of the Term Loan permitted defendant to charge "default interest" on the principal balance at the "default rate" of 24% per year. In addition, Section 10.09 stated in pertinent part that

> [n]o modification, amendment or waiver of any provision of [the Term Loan] shall in any event be effective unless the same shall be in writing and signed by [defendant] and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

Plaintiff did not make timely interest payments on the Term Loan in January, February, and March 2016. On January 19, 2016, plaintiff agreed to sell the Lambertville property. In that same month, it also received a commitment to refinance a portion of the Term Loan. Plaintiff then advised defendant that it intended to use the funds from these transactions to pay off the entire balance of the loan. On February 29, 2016, defendant gave plaintiff a written payoff statement. This statement calculated interest at the 12% non-

3

default interest rate, and did not charge plaintiff for any default interest at the 24% default rate.

On March 10, 2016, plaintiff completed the refinance and paid $2.1 million to defendant. Defendant accepted the payment and discharged the mortgage it had been holding on the Barnegat property. However, defendant did not apply the $2.1 million in accordance with the terms of its February 29 payoff statement. Instead, defendant recalculated past due interest to include default interest at the 24% rate and applied $70,000 of the payment to default interest that allegedly accrued in January and February instead of applying it to the Term Loan balance. Plaintiff protested defendant's imposition of the default interest.

On April 6, 2016, the parties' representatives, including defendant's vice president, Michael Giannone, and plaintiff's trustee, Louis Mercatanti, participated in a telephone conference call to resolve the dispute. On that date, Giannone sent the following email to Mercatanti and Kenneth Zeng, another of plaintiff's representatives:

> Gentlemen,
>
> Per our discussion, [defendant] is willing to put off the accrued default interest owed until the loan is repaid in full. You will continue to pay us monthly interest payments on the loan balance assumed no accrued interest was applied at the time of the loan pay down. If the loan at any time is in default again between now

A-1250-17T3

and the maturity date of June 30, 2016, you will be responsible for the accrued default interest. If you pay [defendant] off with no further default [defendant] will agree to waive such accrued default interest at such time.

Thank you

Mike Giannone
Vice President
Revere Capital

Three minutes later, Mercatanti responded by email, and stated:

Thanks Mike, look forward to getting this loan repaid asap.
Lou

Later that afternoon, Giannone sent Mercatanti and Zeng a second email confirming the terms of the resolution. In pertinent part, this email stated:

Per our discussion, due to lack of payment, starting January 1, 2016, your loan in the amount of [$3.5 million] was placed in default. According to the loan docs, the default interest rate is set at 24%, resulting in $140,000 in accrued default interest between January 2016 and the time a principal pay down on March 10, 2016, at which time [defendant] applied the principal pay down to $70,000 of accrued interest and $7000 in late fees before being applied to the principal balance, resulting in a loan balance of [$1.477 million] on 3/10/16.

[Defendant] has agreed to delay the $70,000 accrued default interest payment until the loan maturity date of June 30, 2016. If at any time the loan, during the forbearance period, goes into default as a result of

A-1250-17T3

either non-payment, maturity, or any other covenants described in the loan documents, [defendant] will require that the $70,000 be paid in full in addition to accrued interest on the $70,000 at 12%. If the loan is repaid between now and the June 30th maturity date with no default in any way, [defendant] is willing to forgive that $70,000 default interest payment.

After the parties' exchange of emails, plaintiff paid interest on the Term Loan at the non-default rate on the principal balance. It did not default on the loan in any way.

Although neither of his April 6, 2016 emails say this, Giannone later claimed in a certification that he "never intended [his April 6 email] to be [a] final and binding modification of the Term Loan." Instead, he asserted that he intended that the "proposed terms" set forth in the emails "could form the basis of a formal written forbearance agreement that could later be drawn up, reviewed by counsel and - if acceptable - signed by the parties." He explained that "[t]his is how this type of commercial transaction is handled in . . . the ordinary course[.]" However, Giannone never expressed this "intent" to either Mercatanti or Zeng. Although the parties later exchanged drafts of a more formal forbearance agreement, they never agreed upon the language. And, in any event, plaintiff complied with the terms set forth in Giannone's April 6 emails.

In order to close out the loan, plaintiff proceeded with the sale of the Lambertville property. In response to a request by plaintiff, defendant sent it a payoff statement on May 19, 2016. Contrary to the representations set forth in Giannone's April 6 emails, the statement included $109,377.33 for default interest, and credited $70,000 from plaintiff's prior $2.1 million payment toward the principal balance against the default interest. Defendant now claimed that plaintiff owed $1,599,308, rather than $1,489,387.74,[1] on the principal balance.

Plaintiff objected to paying that amount, but defendant refused to discharge the Lambertville mortgage in order to enable plaintiff to sell the property. On May 25, 2016, the Chancery Division denied plaintiff's motion for a declaration that it did not owe the default interest, without prejudice to its right to seek to recover any default interest paid to defendant at the closing. Plaintiff then sold the Lambertville property and paid defendant the payoff balance, including the disputed default interest.

As a result of this payment, plaintiff alleged that defendant received $102,920.26 more than it should have received after the parties' April 6 agreement. It filed a one-count complaint against defendant, and asserted that

---

[11] This balance included the prior $1.477 million balance, plus $12,387.74 in interest accruing at the 12% non-default rate.

defendant breached the parties' agreement that all default interest would be waived if plaintiff committed no further defaults and paid the principal balance by June 30, 2016. Following discovery, both parties filed motions for summary judgment.

On September 29, 2017, Judge Troncone granted plaintiff's motion, and denied defendant's cross-motion. In his thorough written decision, the judge explained that he found

> no genuine disputes as to the material facts in this case. Plaintiff missed three loan payments, the parties exchanged emails indicating the default interest would not accrue if the new conditions set forth were met, [p]laintiff upheld its end of the agreement by paying off the loan, [d]efendant breached the terms of the email communication by requiring default interest, and [p]laintiff incurred monetary losses as a result. The [c]ourt finds the April 6, 2016 emails constitute a writing in light of the modern trend of New Jersey [c]ourts to recognize[] electronic communications as writings. The [c]ourt is further satisfied the email signature of Mr. Giannone constituted a signature by the lender as required in the Term Loan. Thus, the emails did constitute an effective modification of the Term Loan Agreement. The facts clearly demonstrate [d]efendant breached the terms of that modification.

Judge Troncone also concluded that the emails were sufficient to meet the requirements of the Statute of Frauds under N.J.S.A. 25:1-5. This appeal followed.

A-1250-17T3

On appeal, defendant argues that summary judgment was inappropriate because there was "a genuine issue of material fact existed as to whether the emails relied upon [by] plaintiff constituted a final, agreed, executed, extension and modification of the existing loan documents." Defendant also alleges that the email exchange: was insufficient "to form an agreement to modify and extend the fully executed and integrated loan documents"; violated the Statute of Frauds; and did not contain sufficient consideration to support a valid contract.

Our review of a ruling on summary judgment is de novo, applying the same standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007) (citing Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We

A-1250-17T3

accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Having considered defendant's contentions in light of the record and applicable legal principles, we are satisfied that Judge Troncone properly granted summary judgment to plaintiff and affirm substantially for the reasons expressed in his September 29, 2017 written opinion. We add the following comments.

It is well established that

> "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). "A written contract is formed when there is a 'meeting of the minds' between the parties evidenced by a written offer and an unconditional, written acceptance." Morton v. 4 Orchard Land Trust, 180 N.J. 118, 129-30 (2004) (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538-39 (1953)).
>
> [Cumberland Farms, Inc. v. New Jersey Dep't of Envtl. Prot., 447 N.J. Super. 423, 439 (App. Div. 2016).]

After forming a contract, the parties "may by mutual assent, modify it." Cnty. of Morris v. Fauver, 153 N.J. 80, 99 (1998) (citing Bohlinger v. Ward & Co., 34 N.J. Super. 583, 587 (App. Div. 1955)). "A modification can be proved

by 'an explicit agreement to modify or by the actions and conduct of the parties as long as the intention to modify is mutual and clear.'" Wells Reit II-80 Park Plaza, LLC v. Dir. Div. of Taxation, 414 N.J. Super. 453, 466 (App. Div. 2010) (quoting DeAngelis v. Rose, 320 N.J. Super. 263, 280 (App. Div. 1999)). Parties to a contract may orally agree to modify contract provisions, even when the original agreement precludes oral modifications. Sodora v. Sodora, 338 N.J. Super. 308, 312 (Ch. Civ. 2000).

Applying these principles, we conclude that Judge Troncone correctly determined that the parties agreed that defendant would waive default interest if plaintiff committed no further defaults and paid off the loan by June 30, 2016. These were the specific terms set forth in Giannone's first email on April 6, and Mercatanti unequivocally accepted them in his reply email three minutes later. Thereafter, Giannone sent a second email confirming that the default interest had been waived, as indicated in the revised payoff figure for the principal balance. It is also undisputed that plaintiff thereafter made its payments on time, thus avoiding any further defaults. Under these circumstances, the April 6 modification was clearly enforceable.

The judge correctly rejected defendant's contention that the modification was not valid because it was not "in writing" and "signed" as required in the

Term Loan, and by the Statute of Frauds.  Here, Giannone and Mercatanti sent each other emails which, when printed, were clearly "writings."  Giannone ended his email by typing his name, title, and contact information, with Mercatanti closing his with the less formal "Lou."

There is no doubt that both Giannone and Mercatanti had full authority to negotiate and consummate the resolution embodied in their email exchange.  While it is true that neither party actually "signed" a separate written document embodying the terms set forth in the emails, to conclude that no modification occurred based on this omission amounts to exalting form over substance.  See Historic Smithville Dev. Co. v. Chelsea Title & Guar. Co., 184 N.J. Super. 282, 293 (Ch. Div. 1981) (holding that a court will look "to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the 'real' relations of the parties.  It will never suffer the mere appearance and external form to conceal the true purposes, objects, and consequences of a transaction"), aff'd, 190 N.J. Super. 567 (App. Div. 1983).[2]

---

[2]  For these same reasons, we also reject defendant's Statute of Frauds contention.  Under N.J.S.A. 25:1-5(f) and (g), contracts "to loan money" and "agreement[s] by a creditor to forbear from exercising remedies pursuant to a contract" are required to be in writing.  As discussed above, however, the emails exchanged by the parties constituted the "writing" necessary to meet this requirement.

Defendant also argues that summary judgment was inappropriate because the judge failed to consider Giannone's claim that he intended that the modification embodied in the April 6 email exchange would not become "final" until after the parties negotiated and signed a separate, written forbearance agreement.  We disagree.

"A contracting party is bound by the apparent intention he or she outwardly manifests to the other party.  It is immaterial that he or she has a different, secret intention from that outwardly manifested." Cumberland Farms, 447 N.J. Super. at 440 (quoting  Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)).  Neither of Giannone's April 6 emails conditioned the waiver of the default interest on the parties subsequently reducing its terms to writing in a separate document.  Instead, the emails clearly state that defendant would waive the default interest if plaintiff had no further defaults and paid off the loan.  As noted above, plaintiff met both of those requirements.

Finally, defendant argues for the first time on appeal that there was no consideration to support the agreement waiving the default interest.  However, we normally "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or

concern matters of great public interest.'" <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973) (quoting <u>Reynolds Offset Co., Inc. v. Summer</u>, 58 N.J. Super. 542, 548 (App. Div. 1959)). Neither of those exceptions applies to this case.

In any event, "[a]ny consideration for a modification, however insignificant, satisfies the requirement of new and independent consideration." <u>Oscar v. Simeonidis</u>, 352 N.J. Super. 476, 485 (App. Div. 2002). Thus, "[i]f the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation." <u>Ibid.</u> (quoting <u>Shebar v. Sanyo Bus. Sys. Corp.</u>, 111 N.J. 276, 289 (1988)).

Defendant's argument that consideration was lacking ignores the fact that after it attempted to impose default interest in March 2016, the parties were poised for litigation. From the prompt manner in which both parties addressed the dispute thereafter, it is clear that each wanted to expeditiously resolve the matter so they could continue to enjoy the benefits of their business relationship. The modification enabled them to do that while avoiding the time and expense, for the time being, of litigation. Thus, there was sufficient consideration to support the formation of a contract.

14

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1250-17T3