**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3423-17T1

VALLEY NATIONAL BANK,

    Plaintiff-Respondent,

v.

PATYRAK REALTY, LLC,

    Defendant,

and

JAMES PATYRAK and DEBORAH
PATYRAK,

    Defendants-Appellants.

_____

> Argued March 12, 2019 – Decided April 29, 2019
>
> Before Judges Yannotti, Rothstadt, and Gilson.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2059-11.
>
> Wolfgang G. Robinson argued the cause for appellants.
>
> James H. Forte argued the cause for respondent (Saiber LLC, attorneys; James H. Forte, on the brief).

PER CURIAM

This appeal arises out of a default of a commercial loan and guaranties of that loan. Defendants James and Deborah Patyrak appeal from three orders entered on March 12, 2018, which (1) granted summary judgment to plaintiff Valley National Bank (Bank or plaintiff) on the Patyraks' "supplemental" counterclaims and dismissed those counterclaims, (2) denied summary judgment to the Patyraks, and (3) denied the Patyraks' motion to compel discovery from the Bank. In entering those orders, the trial court found that the Patyraks had settled the remaining disputes with the Bank. We agree and affirm.

I.

In 2007, Patyrak Realty, LLC (P. Realty) borrowed $750,000 from the Bank and executed a note promising to repay that loan in monthly installments over the next twenty-five years. The note provided that if P. Realty defaulted, the Bank could demand the entire remaining amount due and could collect that amount immediately. The note was secured by a mortgage on commercial property located in Warren Township.

The Patyraks both executed guaranties, agreeing that if P. Realty failed to pay its obligations under the note or mortgage, they would pay those obligations. In that regard, the guaranties stated:

A-3423-17T1

I guarantee to you[, the Bank,] that every Obligation will be paid when it is due, no matter what may happen. This means that you can demand payment from me if [P. Realty] fails to pay you in full for all of the Obligation.

. . . . This guaranty covers all of the Obligations, including, without limitation, the Note and the Mortgage.

In 2011, P. Realty ceased paying the amounts due under the note. Accordingly, in June 2011, the Bank declared P. Realty in default, accelerated the outstanding balance of the loan, and demanded full payment. That written demand was sent to P. Realty and the Patyraks.

Neither P. Realty nor the Patyraks cured the default. Accordingly, the Bank commenced two legal actions. First, in July 2011, it sued P. Realty and the Patyraks on the note and the guaranties (the Note Action). Second, in September 2011, it filed a foreclosure complaint, seeking to foreclose on the mortgaged property (the Foreclosure Action).

On August 1, 2013, a final judgment was entered in the Foreclosure Action. Under that final judgment, the Bank was awarded $902,121.90, together with interest and "costs to be taxed, including a counsel fee of $7,500.00[.]" On December 3, 2013, the mortgaged property was sold at a sheriff's sale for $810,000. After deducting the sheriff's commission and related costs, the Bank

received $777,887.40. There was no appeal from the final judgment entered in the Foreclosure Action.

Meanwhile, in the Note Action, P. Realty and the Patyraks initially failed to respond to the complaint and a default was entered against them. The trial court later set aside the default against the Patyraks, and the Patyraks filed an answer and cross-claim against P. Realty. In addition, the Patyraks asserted counterclaims against the Bank for breach of federal and state banking laws, tortious interference with economic advantage, and violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210.

In April 2014, after the Bank had received the proceeds from the sale of the mortgaged property, it moved for summary judgment against the Patyraks on its claims under the guaranties of the note. In support of that motion, the Bank submitted a certification of a vice president who asserted that, after accounting for the $777,887.40, a total of $286,476.31 was due, which included $226,168.66 in principal; $2,095.21 in interest; $57,068.78 for taxes paid; $306.28 in late charges; and $837.38 for legal fees.

The Patyraks opposed the Bank's motion and submitted certifications challenging the amount due. The Patyraks also argued that they were entitled

A-3423-17T1

to a credit for the difference between the sales price of the mortgaged property and its fair market value.

On June 20, 2014, the trial court ruled that the Bank was entitled to summary judgment and rejected the Patyraks' contention that there were genuine issues of material fact as to the amount due. Accordingly, that same day, the trial court entered a judgment for the Bank in the amount of $290,940.21, which included the total amount as set forth in the Bank's certification, plus additional interest of $45.55 per day that had accrued since the balance due was calculated by the Bank on March 14, 2014. Thereafter, the Patyraks filed a motion for reconsideration of the judgment, which the court denied on October 24, 2014.

In November 2014, the Bank filed a motion for summary judgment on the Patyraks' counterclaims. The trial court considered that motion on March 20, 2015, and placed its decision on the record. The trial court found that the Bank was entitled to summary judgment on each of the Patyraks' counterclaims and, accordingly, on March 20, 2015, the court entered an order dismissing the Patyraks' counterclaims with prejudice.

In April 2015, the Patyraks filed an appeal of the orders granting the Bank's motions for summary judgment. We affirmed the trial court's order granting summary judgment to the Bank on the Patyraks' counterclaims. We

A-3423-17T1

also rejected the Patyraks' contention that they were entitled to a hearing on a fair market value credit. We did, however, find that there was a genuine issue of material fact as to the amount due to the Bank under the note and remanded for further proceedings limited to that issue. <u>Valley Nat'l Bank v. Patyrak Realty, L.L.C.</u>, No. A-3892-14 (App. Div. Oct. 20, 2016) (slip op. at 11, 13).

Following our remand, the Patyraks filed a motion to vacate the judgment entered on June 20, 2014. Separately, the Bank filed a motion to reduce the amount of the judgment from $290,940.21 to $124,234.50.

The Bank had also taken steps to collect on the judgment. In that regard, the Bank had docketed the judgment in New Jersey and had retained counsel in Michigan and Florida to docket the judgment in those states because the Bank believed that the Patyraks had real and personal property in those states.

While the motions to vacate the judgment and reduce the judgment were pending before the trial court, counsel for the Patyraks sent an email to counsel for the Bank stating: "[I]f [the Patyraks] can satisfy the judgment, will your office take care of the process to remove the judgment as registered in Michigan and Florida?" The Bank's counsel responded:

> Yes, [i]f the Bank forthwith receives the $124,234.50 it will consider the judgment satisfied in all states. I will sign the Warrant to Satisfy Judgment in full for you to file with the Court in Trenton and that filed Warrant

A-3423-17T1

should then be sent to Patyraks' counsel in Florida and Michigan. Let me know if you need wire transfer instructions.

On November 17, 2016, counsel for the Patyraks wrote to the trial court informing the court that the dispute between the parties had been resolved, but it might take time to file the warrants to satisfy the judgments in Michigan and Florida. Therefore, the parties requested the court to put off the hearing on the pending motions. Specifically, counsel for the Patyraks stated to the court:

> The dispute has been resolved but because the matter involves the need to satisfy the judgment in all jurisdictions we feel we may not have all mechanics worked out by the November 18, 2016 return date. For this reason, it is requested that the Motions be carried.
>
> For informational purposes, the NJ judgment was registered in the jurisdictions of Michigan and Florida for enforcement purposes. It appears that all parties are in agreement as to the mode of satisfaction upon payment of the settlement funds, but again, we are not certain we can conclude the matter by this afternoon. I have advised my client to forward the settlement monies by wire presently.

The Patyraks then wire transferred $124,234.50 to the Bank and the Bank received that payment. Thereafter, the Bank authorized its counsel to file a warrant of satisfaction to satisfy the judgment in New Jersey and other documents were sent to satisfy the judgments that had been docketed in Florida

7

and Michigan. The warrant to satisfy the judgment in New Jersey was recorded on December 15, 2016.

In May 2017, the Patyraks hired a new lawyer who filed a motion to file "supplemental" counterclaims. The supplemental counterclaims sought to assert five claims contending that the Bank had (1) abused process, (2) engaged in consumer fraud, (3) engaged in fraud, (4) breached the terms of the guaranties, and (5) breached the covenant of good faith and fair dealing. In July 2017, the trial court allowed the Patyraks to file the supplemental counterclaims.

In January 2018, the Bank filed a motion for summary judgment seeking to dismiss the Patyraks' supplemental counterclaims. The Bank contended that the supplemental counterclaims were barred because the parties had settled their remaining differences. The Patyraks opposed that motion and filed a motion for partial summary judgment seeking to dismiss the Bank's 2011 complaint with prejudice because they contended that the Bank had assigned the underlying debt before it filed its complaint. The Patyraks also filed a motion to compel discovery from the Bank.

The trial court heard oral arguments on those motions on March 2, 2018. Thereafter, on March 12, 2018, the court issued three orders, which (1) denied the Patyraks' motion for summary judgment; (2) denied the Patyraks' motion to

compel discovery; and (3) granted summary judgment to the Bank and dismissed the Patyraks' supplemental counterclaims. In a written statement of reasons that accompanied the orders, the trial court found that the Patyraks had settled all the remaining claims with the Bank by paying $124,234.50 in exchange for the satisfaction of the judgment.

II.

The Patyraks now appeal the three orders entered on March 12, 2018. They make two primary arguments. First, they contend that there was no settlement of their right to pursue additional claims against the Bank. In connection with that argument, the Patyraks also assert that there were material factual disputes concerning whether a settlement had been reached and the scope of that settlement. Second, the Patyraks argue that the trial court erred in denying summary judgment in their favor because the Bank did not have the right to enforce the promissory note. The record does not support either of these arguments. Accordingly, we reject the Patyraks' arguments and affirm.

We review de novo orders granting summary judgment, and apply the same standard that governed the trial court's ruling. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment will be granted if, viewing the evidence in the light most favorable to the non-moving party, "there is no

genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A., 224 N.J. 189, 199 (2016)); R. 4:46-2(c). See also Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the interpretation and enforceability of a settlement agreement de novo).

A.    The Settlement

"A settlement agreement between parties to a lawsuit is a contract." Cumberland Farms, Inc. v. N.J. Dep't Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). Accordingly, such agreements "will be honored 'absent a demonstration of fraud or other compelling circumstances.'" Ibid. (quoting Nolan, 120 N.J. at 472). The party seeking to enforce the settlement bears the burden of demonstrating that the parties entered into such an agreement. Ibid. (citing Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997)).

To establish a valid agreement, the moving party must show an offer, an acceptance, consideration, and that the terms of were reasonably certain. See Id. at 439; Oscar v. Simeonidis, 352 N.J. Super. 476, 484 (App. Div. 2002). In other words, "[l]ike any contract, a valid settlement agreement requires an 'offer

and acceptance' by the parties, and the terms of the agreement must 'be sufficiently definite [so] "that the performance to be rendered by each party can be ascertained with reasonable certainty."'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 185 (2017) (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)). Moreover, the agreement can be oral; there is no requirement that it be in writing. Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983).

Here, there was a meeting of the minds between the parties and the terms of the agreement were sufficiently defined. When we remanded the matter to the trial court, there was one issue to be addressed: the amount of the judgment. The judgment entered by the trial court on June 20, 2014 was $290,940.21. On remand, the Bank moved to reduce that judgment to $124,234.50.

Counsel for the Patyraks then made an offer to pay $124,234.50 in exchange for satisfaction of the judgment. The Bank accepted that offer. Thereafter, consideration was exchanged: the Patyraks paid the $124,234.50 and the Bank issued warrants to satisfy the judgment.

Furthermore, both parties treated the matter as a settlement. Counsel for both parties repeatedly referred to the payment and warrant to satisfy as a "settlement." Indeed, counsel for the Patyraks wrote to the court and advised that the "dispute has been resolved" and that the Patyraks would be forwarding

11

"the settlement monies by wire presently." Nowhere in the exchanges between counsel for the parties or in the letter to the court was there any reservation of a right by the Patyraks to pursue future claims against the Bank. Indeed, when the warrant of satisfaction of the judgment was filed, we had previously affirmed an order dismissing all counterclaims by the Patyraks against the Bank with prejudice. See Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992) (holding that there had been a meeting of the minds concerning a settlement agreement "despite [one party's] undisclosed intention to preserve a right to maintain a lawsuit against [the other party]").

The Patyraks argue that even if they entered into an enforceable settlement agreement, the agreement should be vacated because their acceptance was involuntary and enforcing the agreement would subvert the law. The indisputable record in this case, however, establishes that the Patyraks' acceptance was voluntary. They voluntarily sent $124,234.50 to the Bank.

Moreover, enforcing the settlement agreement would not subvert the law. To the contrary, there is a strong public policy in New Jersey favoring settlement and enforcing those settlements. See, e.g., Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008); Kaur, 405 N.J. Super. at 475.

B.    The Denial of Summary Judgment in Favor of the Patyraks

The Patyraks also argue that the trial court erred in not granting their motion for summary judgment. In their motion, the Patyraks sought dismissal of the Bank's complaint because they contended that the Bank did not have the right to enforce the note when it filed suit in 2011. The short and definitive answer to that contention is that the issue of the Bank's right to enforce the note had previously been resolved in favor of the Bank. As already noted, in their first appeal to us, the Patyraks did not challenge the Bank's right to enforce the note and guaranties. Instead, they limited their challenge to disputing the amount of the judgment. Thus, when we remanded that matter, the issue of the Bank's right to enforce the note was no longer open to challenge.

Nonetheless, the Patyraks argue that they could not have challenged the Bank's right to enforce the note earlier in the litigation because they first discovered a mortgage loan assignment agreement between the Bank and a non-party in 2018, after the trial court had granted their motion to compel additional discovery. The existence of that agreement, however, does not entitle the Patyraks to now seek dismissal of the Bank's complaint through a summary judgment motion. As previously explained, final judgment had been entered and affirmed. The parties had then settled their dispute as to how much was

A-3423-17T1

owed under the judgment, and the judgment was recorded as satisfied. Thus, the Bank had no pending claims against the Patyraks on which a court could grant summary judgment relief. The Patyraks cannot seek summary judgment on an issue that was resolved by the final judgment. Instead, they would have had to seek to vacate the final judgment under Rule 4:50-1. Compare R. 4:46 (explaining a summary judgment motion allows a party to seek adjudication of a claim when "the moving party is entitled to a judgment or order as a matter of law") with US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 466 (2012) (explaining that Rule 4:50-1 governs a party's motion for relief from judgment after it has been entered against them). Here the Patyraks made no showing justifying relief under Rule 4:50-1.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3423-17T1