NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0657-15T3

BERNETICH, HATZELL & PASCU, LLC,
on behalf of itself and all
others similarly situated,

    Plaintiff-Respondent,

v.

MEDICAL RECORDS ONLINE, INC.
(d/b/a "MRO"),

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

April 22, 2016

APPELLATE DIVISION

    Argued April 6, 2016 — Decided April 22, 2016

    Before Judges Ostrer, Haas and Manahan.

    On appeal from the Superior Court of New
    Jersey, Law Division, Camden County, Docket
    No. L-1271-15.

    Lisa J. Rodriguez argued the cause for
    appellant (Schnader Harrison Segal & Lewis
    LLP, attorneys; Ms. Rodriguez, of counsel;
    David Smith, Carl A. Solano and Bradly A.
    Nankerville, on the briefs).

    Joseph A. Osefchen argued the cause for
    respondent (DeNittis Osefchen, P.C.,
    attorneys; Stephen P. DeNittis and Mr.
    Osefchen, on the brief).

    The opinion of the court was delivered by

OSTRER, J.A.D.

In this appeal, we conclude that a hospital's medical records processor may not enforce a mandatory arbitration clause that it included in its invoice to a patient's attorney in response to a request for records. The hospital, and the processor acting as its agent, had a pre-existing legal duty under State law to provide the patient's records. Consequently, the records requester's alleged bargain to arbitrate any dispute related to the invoice was unsupported by consideration, and therefore unenforceable. We therefore affirm the trial court's order denying the records processor's motion to compel arbitration of a dispute over its invoice.

I.

Defendant Medical Records Online, Inc. (MRO) is a third-party processor of requests for medical records submitted to hospitals and physicians, including Kennedy Memorial Hospitals (Kennedy Hospitals) in Washington Township. Plaintiff Bernetich, Hatzell & Pascu, LLC (BH&P) is a personal injury law firm. A prospective client, J.H., authorized BH&P to obtain his medical records from Kennedy on his behalf. BH&P sent Kennedy Hospitals a medical records request on February 23, 2015.

In response to the request, MRO sent BH&P an invoice for $204.19. MRO stated prepayment was required before it would release the records; payment would constitute approval of the

charges and the invoice; and if BH&P disputed the invoice, it had to arbitrate first. The invoice provided:

> By paying this invoice, you are representing that you have reviewed and approved the charges and have agreed to pay them. Any dispute relating to this invoice must be presented before paying this invoice. Any dispute not so presented is waived. All disputes must be resolved by arbitration under the Federal Arbitration Act through one or more neutral arbitrators before the American Arbitration Association. Class arbitrations are not permitted. Disputes must be brought only in the claimant's individual capacity and not as a representative of a member or class. An arbitrator may not consolidate more than one person's claims nor preside over any form of class proceeding.[1]

The bottom of the invoice stated, "Please contact MRO . . . for any questions regarding this invoice."

MRO retrieved 271 pages, for which it charged $204.19. This charge consisted of a $10 search and retrieval fee, $1.19 for postage, and $193 in per-page fees. The fees were calculated at the rate of $1.00 a page for pages one through 100 for each visit, and twenty-five cents a page for additional pages for each visit. The invoice stated that records over seventy-five pages "may be sent on CD-ROM." BH&P paid the

---

[1] We will hereinafter refer to this paragraph as the arbitration provision.

invoice and received a CD-ROM containing the 271 pages of medical records.

Thereafter, BH&P filed a complaint on behalf of itself and a putative class, alleging that MRO overcharged BH&P and other records requesters. BH&P alleged that patients and their authorized agents are legally entitled to obtain their medical records, and that health care providers may only charge a cost-based fee. BH&P alleged that MRO's per page fee was unrelated to, and far exceeded, its actual costs in retrieving electronically stored medical records and transferring them onto digital media. BH&P alleged that MRO's billing practices violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (CFA), among other claims. MRO responded by filing a motion to compel arbitration, or, alternatively, to dismiss for failure to state a claim. R. 4:6-2(e).

The trial court denied MRO's motion to compel arbitration.[2] Citing Atalese v. U.S. Legal Services Group, 219 N.J. 430 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015), the court held that the invoice was a consumer contract that did not put BH&P on notice, with sufficient clarity and prominence, that by paying the invoice it was

_____

[2] The court decided the arbitration motion first, and thereafter stayed action on the dismissal motion pending this appeal.

waiving its right to litigate. Further, the invitation at the bottom of the invoice to call MRO with questions was not a clear mechanism for opting out of arbitration. The judge concluded that the invoice held a consumer's records "hostage" until a consumer paid the invoice and, thereby, purportedly agreed to the terms of the arbitration provision. The court denied MRO's motion to compel arbitration. This appeal as of right followed. See R. 2:2-3(a)(3).

On appeal, MRO argues that the arbitration provision is enforceable. MRO contends that BH&P accepted the arbitration provision, and waived any objection to its terms, by paying the invoice without first raising its dispute. MRO also contends that the invoice is neither a consumer contract nor subject to the stringent standards established in Atalese; and it clearly informed BH&P that disputes over the invoice must be arbitrated. MRO asks us to enforce federal and state laws that favor arbitration, and to reverse the trial court's order.

BH&P responds that the arbitration provision is a consumer contract; Atalese applies; and the arbitration provision did not provide clear and unambiguous notice to consumers that, by paying the invoice, they were waiving their right to sue. BH&P argues its payment did not constitute assent to the arbitration provision. BH&P also argues that the arbitration provision is

unenforceable because MRO imposed it unilaterally. As MRO had a legal duty to provide the requested records, BH&P argues it was unlawful and unconscionable to condition performance of that duty upon consent to the arbitration provision.

## II.

## A.

We exercise plenary review regarding whether an arbitration agreement is valid and enforceable. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013).

Though both the Federal Arbitration Act, 9 U.S.C.A. §§ 1 to 16, and New Jersey's version of the Uniform Arbitration Act, N.J.S.A. 2A:23B-1 to -32, reflect a preference for arbitration, arbitration remains "a matter of contract." AT&T Mobility LLC v. Conception, 363 U.S. 333, 339, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742, 751 (2011) (citation omitted); Fawzy v. Fawzy, 199 N.J. 456, 469 (2009) (stating arbitration is "a creature of contract.") (citation omitted). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 655 (1986); Atalese, supra, 219 N.J. at 430 ("Parties are not required to arbitrate when they have not agreed to do so.") (quoting Volt Info. Scis. v. Bd. of

Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488, 499 (1989)).

We apply state contract law to determine whether a valid agreement to arbitration exists. Id. at 441. "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 993 (1995). However, we may not "subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts." Leodori v. CIGNA Corp., 175 N.J. 293, 302, cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L. Ed. 2d 250 (2003).

We view the principal issue in this case to be whether MRO's fulfillment of a pre-existing legal duty — to provide medical records for a cost-based fee — furnishes consideration to create an enforceable contract to arbitrate. We will first outline the nature of the duty, and then review the applicable contract principles.

Under state and federal law, a patient has a qualified right to inspect or obtain copies of his or her medical records. Federal regulations adopted pursuant to 42 U.S.C.A. §§ 1320d to 1320d-9, provisions of the Health Insurance Portability and

Accountability Act of 1996 (HIPAA), grant "an individual . . . a right of access to inspect and obtain a copy of protected health information about the individual in a designated record," 45 C.F.R. § 164.524(a), upon payment of a "reasonable, cost-based fee. . . ." 45 C.F.R. § 164.524(c)(4). However, certain kinds of records are excluded, and various circumstances may justify denial of access to otherwise disclosable records. 45 C.F.R. § 164.524(a)(2), (a)(3). The federal right to access medical records for a cost-based fee extends to an individual's personal legal representative, which has been construed to include a guardian, but not such other agents as attorneys. Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1085-86 (9th Cir. 2007).

The New Jersey patient's right to access records is not so limited, and extends to the patient's attorneys. The Hospital Patients Bill of Rights includes the right "to access" "all records pertaining to the patient's treatment . . . including receipt of a copy thereof at reasonable cost, upon request, unless the patient's physician states in writing that access by the patient is not medically advisable . . . ." N.J.S.A. 26:2H-12.8(g). This right is implemented by State regulation, N.J.A.C. 8:43G-4.1(a)(25), which enumerates a hospital patient's rights, and establishes the right "[t]o obtain a copy of the patient's medical record, at a reasonable fee, within 30 days of

a written request to the hospital" unless access is "medically contraindicated . . . ."  The thirty-day deadline is also found in N.J.A.C. 8:43G-15.3(d).[3]

The "reasonable fee" must be a "fee based on actual costs," yet it may not exceed established ceilings, which vary depending on who requests the documents.  N.J.A.C. 8:43G-15.3(d), (e). One standard applies to the "patient or the patient's legally authorized representative," N.J.A.C. 8:43G-15.3(d), which includes, among others, an attorney, as well as a spouse, guardian, or insurer.  N.J.A.C. 8:43G-15.3(d)(5).  Another standard applies to requests made by anyone else whom the patient has authorized, as well as health care providers themselves and their attorneys.  N.J.A.C. 8:43G-15.3(e).

The regulation states:

> (d) If a patient or the patient's legally authorized representative requests, in writing, a copy of his or her medical record, a legible, written copy of the record shall be furnished at a fee based on actual costs.  One copy of the medical record from an individual admission shall be provided to the patient or the patient's legally authorized representative within 30

---

[3] The Board of Medical Examiners has promulgated separate regulations governing the right to, and charges for, patient records held by its licensees.  See N.J.A.C. 13:35-6.5(c)(4); Boldt v. Correspondence Mgmt., 320 N.J. Super. 74, 78-81 (App. Div. 1999) (distinguishing between N.J.A.C. 8:43G-15.3 and N.J.A.C. 13:35-6.5).

days of the request, in accordance with the following:

1. The fee for copying records shall not exceed $ 1.00 per page or $ 100.00 per record for the first 100 pages. For records which contain more than 100 pages, a copying fee of no more than $ 0.25 per page may be charged for pages in excess of the first 100 pages, up to a maximum of $ 200.00 for the entire record;

2. In addition to per page costs, the following charges are permitted:

i. A search fee of no more than $ 10.00 per patient per request. (Although the patient may have had more than one admission, and thus more than one record is provided, only one search fee shall be permitted for that request. The search fee is permitted even though no medical record is found as a result of the search.); and

ii. A postage charge of actual costs for mailing. No charges shall be assessed other than those permitted in (d)1 and 2 above;

. . . .

(e) The fee for copying medical records shall be based on actual costs, which in no case shall exceed $ 1.00 per page and $ 10.00 per search, in the case of the following:

1. Where the patient has authorized release of his or her medical record to a person or entity other than those identified in (d) above, including but not limited to physicians or other practitioners who provided care to the patient, or attorneys representing such providers; or

2. The patient subsequently requests additional copies of a medical record which

10

> has been furnished in accordance with (d)
> above.
>
> [N.J.A.C. 8:43G-15.3(d)-(e).]

As the fee must be based on "actual cost," the per-page amounts serve only to establish the maximum a patient may be charged. See Smith v. Hudson Register, 411 N.J. Super. 538, 571 (App. Div. 2010);[4] see also Boldt, supra, 320 N.J. Super. at 82.[5]

The regulation provides that "[a]ccess to the medical record shall be limited only to the extent necessary to protect the patient." N.J.A.C. 8:43G-15.3(f). Hospitals shall review their medical record department's policies and procedures, including its fees, at least every three years. N.J.A.C. 8:43G-15.2(a).

Nothing in N.J.A.C. 8:43G-15.3 expressly permits a hospital to exact any consideration other than a cost-based fee in return for supplying records. Doing so would burden the patient's

---

[4] Smith was superseded on other grounds by N.J.S.A. 47:1A-5(b), as recognized in Smith v. Hudson County Register, 422 N.J. Super. 387, 391 (App. Div. 2011).

[5] In a petition for rulemaking, the Association of Health Information Outsourcing Services argued that its members should not be required to justify the charge of each medical record request based on its cost because it would be impractical to do so. It proposed that the Department of Health and Senior Services amend its regulation to permit the association's members to charge the amounts specified in the regulation. 29 N.J.R. 5335(a) (Dec. 15, 1997). The Department referred the matter for study. 30 N.J.R. 3338(a) (Sept. 8, 1998). The proposal was never adopted.

A-0657-15T3

right, guaranteed by statute, to his or her records. Indeed, in some respects, a hospital may be constrained to accept less than a cost-based fee, as the regulation sets a $200 maximum for an entire record requested by a patient or the patient's legally authorized representative. N.J.A.C. 8:43G-15.3(d). Hospitals must also "establish a policy assuring access to copies of medical records for patients who do not have the ability to pay. . . ." N.J.A.C. 8:43G-15.3(d)(3). On the other hand, a hospital's fee policy shall include incentives to encourage patients to accept summaries or abstracts of their medical records. N.J.A.C. 8:43G-15.3(d)(4).

Returning to the question of whether the arbitration provision is enforceable, we apply the fundamental principle that "[n]o contract is enforceable . . . without the flow of consideration — both sides must 'get something' out of the exchange." Continental Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, 170 (citation omitted), cert. denied, 464 U.S. 994, 104 S. Ct. 488, 78 L. Ed. 2d 684 (1983). "Basic contract principles render a promise enforceable against the promisor if the promisee gave some consideration for the promise." Martindale v. Sandvik, 173 N.J. 76, 87 (2002). Consideration "is a bargained-for exchange of promises or performance that may consist of an act, a forebearance, or the

creation, modification, or destruction of a legal relation."
Ibid. (citation omitted); see also Sipko v. Koger, Inc., 214
N.J. 364, 381 (2013) (invalidating stock transfers based on lack
of required consideration). Therefore, consideration is
essential to form an agreement to arbitrate. Martindale, supra,
173 N.J. at 88-89 (finding consideration for arbitration
agreement).

However, consideration generally may not be furnished by
fulfilling a pre-existing legal duty. "Performance of a legal
duty owed to a promisee which is neither doubtful nor the
subject of honest dispute is not consideration. . . ."
Restatement (Second) of Contracts, § 73 (1981);[6] Segal v. Lynch,
211 N.J. 230, 253 (2012) (stating that "consideration cannot be
a promise to perform a pre-existing legal duty") (citing
Williston on Contracts § 7:37 (4th ed. 2008)).

Consistent with this principle, a party may not impose an
arbitration clause after the parties have already exchanged
consideration and created an enforceable contract. We held that
a party was not obliged to arbitrate a warranty claim where the
arbitration clause was sent to the party after they entered the
original contract. Paul v. Timco, Inc., 356 N.J. Super. 180,

---

[6] We recognize that the "pre-existing duty rule" is not without
exceptions. See Restatement (Second) of Contracts, § 89 (1981).
However, none apply here.

185-86 (App. Div. 2002). "One party to a contract may not unilaterally impose an obligation to arbitrate upon another party to the contract." Id. at 185.

In this case, MRO's pre-existing duty arises from statute and regulation, as opposed to contract. As the records processor for Kennedy Hospitals, MRO was obliged to provide medical records upon the request of "a patient or the patient's legally authorized representative" or anyone else whom the patient has authorized.[7] N.J.A.C. 8:43G-15.3(d), (e). MRO contended in oral argument that the medical records constituted consideration for BH&P's alleged promise to arbitrate. We disagree. As BH&P had a pre-existing right to the records for a cost-based fee, it does not "get something" out of the alleged agreement to arbitrate that it did not already have. Further, in exchange for assent to the arbitration provision, MRO did not promise BH&P anything it was not already obliged to provide.

_____

[7] MRO questioned whether BH&P was the patient's attorney, because BH&P referred to the patient as a "potential client," and asserted that it sought the records for itself, noting that doing so established its standing to dispute MRO's invoice. Whether BH&P is a "legally authorized representative" as the patient's attorney under N.J.A.C. 8:43G-15.3(d), or another entity authorized by the patient under N.J.A.C. 8:43G-15.3(e), is of no moment in our contract analysis. Kennedy Hospitals and MRO owe a legal duty to produce the records to either one.

In sum, the alleged agreement to arbitrate lacks consideration. BH&P may not be held to the terms of the arbitration provision in the invoice.

B.

MRO argues that even if it had no contractual right to compel arbitration, BH&P surrendered any right to object simply by paying the invoiced amount, rather than presenting its dispute prior to payment. We disagree. In characterizing payment as a waiver, MRO relies on the terms of the invoice, which provide that payment constitutes a complete waiver of any objection or dispute. But this begs the question. The term providing for waiver of disputes upon payment suffers from the same shortcoming as the term requiring arbitration. It lacks consideration.

Furthermore, a waiver is a "<u>voluntary</u> and intentional relinquishment of a known right." <u>Knorr v. Smeal</u>, 178 <u>N.J.</u> 169, 177 (2003) (emphasis added). Even assuming that BH&P, unlike an unsophisticated patient, fully understood that MRO intended to secure its non-objection by payment, there was nothing "voluntary" about the choice MRO presented. MRO demanded prepayment before releasing the records. MRO thus presented a patient with a dilemma: pay the invoice and surrender the right to raise any dispute relating to it; or raise a dispute, and

incur an inevitable delay in receiving the records as the matter proceeds to arbitration, in derogation of the right to receive records in no more than thirty days.[8] N.J.A.C. 8:43G-4.1(a)(25); N.J.A.C. 8:43G-15.3(d).

We reject the notion that MRO's invitation to call "for any questions regarding this invoice," included at the bottom of the invoice, offered BH&P a meaningful opportunity to contest the terms of the invoice. MRO did not invite calls to register an objection. Nor would it be reasonable for the reader to conclude that the invitation to pose questions indicated a willingness to deviate from the emphatic statement, "prepayment required," placed at the very top of the invoice, or any other of its terms.

The purported waiver was the product of a threat to withhold the requested medical records for an indeterminate period of time while the dispute was referred to arbitration. See Restatement (Second) of Contracts, cmt. b to § 73 (noting the "danger of express or implied threats to withhold performance" of a legal duty, and that "[a] bargain induced by an improper threat may be voidable for duress"); Id. § 175 ("If

_____

[8] In oral argument, MRO contended that "a dispute relating to this invoice" included a dispute regarding the accuracy or completeness of the records provided, notwithstanding the impossibility of discovering the basis for such a dispute prior to payment and receipt of the records.

A-0657-15T3

a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim."). Thus, BH&P's payment of the fee does not constitute an enforceable waiver of the right to object to the arbitration provision that MRO unilaterally imposed.

Given our conclusion that the arbitration provision is unenforceable for a lack of consideration, we need not address whether the invoice is a consumer contract under Atalese, or, had there been an exchange of consideration, whether the terms of the provision were sufficiently clear and unambiguous to be enforceable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                          A-0657-15T3