**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2421-22

LEROY KAY,

     Plaintiff-Respondent,

v.

SCI NEW JERSEY FUNERAL
SERVICES, LLC, d/b/a
BLOOMFIELD-COOPER
JEWISH CHAPELS,[1]
MARK R. HARRIS,
individually and as manager,
ANTHONY GERAHTY,
MELANIE CHONGOLOLA-
NESTOR, SARA GIUSTINO
TOLAND, ROBERT P.
SZEGETI, JAIME MAYNARD,
all individually and as
funeral directors, and SUSAN
BATKO, individually and as
Advanced Planning Director,

     Defendants-Appellants,

and

DIGNITY MEMORIAL

---

[1] Improperly pled as Bloomfield-Cooper Jewish Chapels.

CORPORATION,

     Defendant.

_____

Argued October 3, 2023 – Decided January 9, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2407-22.

James-Harry Oliverio argued the cause for appellants (Anselmi & Carvelli, LLP, attorneys; James-Harry Oliverio, on the briefs).

Clifford David Bidlingmaier, III, argued the cause for respondent (Law Offices of Robin Kay Lord, LLC, and Bidlingmaier & Bidlingmaier, PC, attorneys; Robin Kay Lord and Clifford David Bidlingmaier, III, on the brief).

PER CURIAM

Defendants SCI New Jersey Funeral Services, LLC, d/b/a Bloomfield-Cooper Jewish Chapels,[2] improperly pled as Bloomfield-Cooper Jewish Chapels, its manager, and several directors appeal from the March 31, 2023, Law Division order denying their motion to compel arbitration and dismiss

---

[2] It is unclear in the record how SCI New Jersey Funeral Services, LLC, d/b/a Bloomfield-Cooper Jewish Chapels, and Dignity Memorial Corporation are related. According to defendants' merits brief, Dignity Memorial Corporation "is not affiliated with [d]efendants."

plaintiff Leroy Kay's complaint without prejudice. We reverse and remand for limited discovery concerning the formation of the operative agreement and specifically whether the parties agreed to arbitrate any disputes.

I.

Defendants provided mortuary services to plaintiff, an eighty-five-year-old widower who had just lost his wife of sixty-three years on October 3, 2020, when she died in her sleep at their home. The dispute arose from a disastrous mishap that occurred when defendants mishandled plaintiff's deceased wife's body while performing the mortuary services shortly after her death.

In his ensuing complaint, filed nearly two years later, plaintiff asserted that he and his wife, Janet Kay, were "of the Jewish faith" and wished to be buried in accordance with its tenets. As a result, plaintiff contacted defendants because they held themselves out as "specializ[ing] in Jewish mortuary services," and on October 3, 2020, defendants took possession of the body along with specific clothing and jewelry for the burial. Plaintiff averred in his complaint that "a contract was formed" between plaintiff and defendants the following day, October 4, 2020, "for mortuary services," and for Janet's[3] remains to be "entombed" at "Mount Sinai Cemetery in Morganville." Plaintiff and

_____

[3] We use first names because of the common surname and intend no disrespect.

defendants agreed that the funeral would take place on October 6, 2020, and that defendants would prepare and transport Janet's body to the cemetery.

According to the complaint, about sixty "friends and family [members]" gathered with plaintiff at Mount Sinai Cemetery on October 6, 2020, for the scheduled funeral service. However, after a prolonged delay, defendant's representative contacted plaintiff and asked questions "indicat[ing] that they had lost the remains of [the decedent]." During a FaceTime call initiated by the representative, plaintiff and family members were shown a deceased woman who was not plaintiff's wife but wearing her clothing and jewelry. Plaintiff and the guests were distraught. Nevertheless, due to the number of family and friends who had traveled to attend the service, the service continued at the mausoleum without Janet's body.

The complaint asserted that later in the day, defendants contacted plaintiff and informed him that Janet "was found . . . buried in [n]orthern New Jersey" "in the wrong cemetery," "in the wrong clothes," "with another woman's jewelry" and "next to a deceased man she [did] not know." The following day, October 7, 2020, after Janet's exhumation was approved, her body was disinterred from the northern New Jersey burial site. On October 8, 2020, after plaintiff's daughter travelled to defendants' facilities in Manalapan to identify

4

Janet's decomposing body, Janet's final funeral service was held with members of the immediate family in attendance. At the conclusion of the service, defendants' representative "had [plaintiff] sign a contract" without "explaining" or "giving him the opportunity to review the document." Instead, plaintiff alleged the representative gave the impression that "they [would] handle everything."

In the complaint, plaintiff asserted the following causes of action: (1) loss of right to interment; (2) breach of contract; (3) violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to –228; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; and (6) negligence. Attached to the complaint was a copy of the contract, showing an unpaid balance of $13,241.12.

The three-page contract, which is dated October 4, 2020, contained two provisions that referenced arbitration. The first provision, located on the second page above the signature line, read, "NOTICE: BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL AS WELL AS YOUR RIGHT OF APPEAL." (Boldface omitted). A statement

incorporating terms and conditions from the third page of the contract appeared above the notice referenced above, stating: "SEE OTHER SIDE FOR TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS AGREEMENT." (Boldface omitted).

The referenced terms and conditions on the third page included an arbitration provision that read in pertinent part:

> ARBITRATION: YOU AGREE THAT ANY CLAIM YOU MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES. IF THE PARTIES FAIL TO OR ARE UNABLE TO AGREE ON THE SELECTION OF AN APPROPRIATE ARBITRATOR, THE AAA SHALL SELECT THE ARBITRATOR PURSUANT TO ITS RULES AND

6

PROCEDURES UPON THE APPLICATION OF ONE OR BOTH PARTIES. THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER'S EMPLOYEES OR AGENTS, ANY OF THE SELLER'S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, AND ANY OF THE EMPLOYEES OR AGENTS OF THOSE PARENT, SUBSIDIARY OR AFFILIATE CORPORATIONS.

[(Boldface omitted).]

Below the arbitration clause was an integration clause which stated:

This [a]greement contains all terms which have been agreed upon by you and us relating to the goods and services listed in the Statement of Funeral Goods and Services Selected. This [a]greement replaces all other discussions and agreements, whether oral or written, relating to those goods and services. No subsequent discussion or agreement can change the terms of this [a]greement unless it is written and is signed by both you and us.

Relying on the arbitration provision in the contract, defendants moved to dismiss the complaint pursuant to Rule 4:6-2(a) and compel arbitration. In a certification opposing defendants' motion, plaintiff averred that he signed the contract on October 8, 2020, not October 4, 2020. Plaintiff asserted he signed the contract "on a podium . . . placed in front of [him] in the mausoleum" following his wife's funeral service "after having seen [his] wife's partially

7

decomposed body." Plaintiff certified he "was instructed to . . . sign what [he] believed to be an invoice presented by [defendant] Anthony Gerahty," one of the funeral directors. According to plaintiff, Gerahty "claimed that it needed to be signed so that the funeral home could 'pick up the bill.'" Plaintiff stated "[a]t no point [has he] ever been asked to . . . nor . . . paid . . . [d]efendants for the services and arrangements for [his] wife's funeral" and "at no time prior to October 8, 2020, did [he] ever discuss an arbitration agreement with . . . [d]efendants."

On March 31, 2023, the motion judge conducted oral argument, positing that the issue before the court was "whether . . . the [arbitration] agreement [was] valid, and . . . whether this dispute falls within the agreement's scope." Defendants argued that the funeral services agreement was a valid contract containing an arbitration clause applicable to claims by both parties and required resolution by an arbitrator of any claims concerning the transaction or any related wrongdoing. Defendants further asserted that plaintiff's challenge to the enforceability of the contract as a whole, which included lack of consideration, fraud, duress, misrepresentation, and unconscionability, was a matter statutorily reserved for the arbitrator pursuant to N.J.S.A. 2A:23B-6 under Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967).

Plaintiff countered that he entered into an oral agreement with defendants on October 4, 2020, which did not include any mention of an arbitration agreement. Therefore, according to plaintiff, the October 4, 2020, oral agreement rendered the arbitration clause contained in the October 8, 2020, invoice invalid under Bernetich, Hatzell & Pascu, LLC v. Medical Records Online, Inc., 445 N.J. Super. 173, 184 (App. Div. 2016), where this court held that "a party may not impose an arbitration clause after the parties have already exchanged consideration and created an enforceable contract." Plaintiff also argued the arbitration provision was unenforceable because there was no meeting of the minds or mutual assent, as the agreement was presented to him as simply an invoice acknowledging receipt of funeral services. Alternatively, plaintiff asserted the October 8, 2020, agreement was procedurally unconscionable and a contract of adhesion.

In an order entered on March 31, 2023, the judge denied defendants' motion. In an oral decision, the judge acknowledged that "the parties actually entered into an oral contract previously, where no arbitration was discussed." However, the judge determined the subsequent written contract entered on October 8, 2020, following "an alleged breach . . . contain[ed] the required mutual assent required to enforce an arbitration provision." Further, the judge

found that "the terms of the arbitration provision [were] clear and unambiguous," and plaintiff's dispute "aris[ing] out of funeral services rendered" fell "within the scope" of the agreement.

Nevertheless, the judge relied on <u>Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.</u>, 416 N.J. Super. 30, 37-38 (App. Div. 2010), where this court stated that "courts may decline to enforce when well-established principles addressing the absence of a consensual agreement and unfairness in contracting and the agreement warrant relief." Applying <u>Moore</u>'s principles, the judge declined to enforce the agreement to arbitrate on the ground of "unconscionability."

The judge explained:

> [I]t's presently disputed as to when plaintiff signed the subject contract, and the circumstances surrounding the signature. The [c]ourt finds that his age, regarding what could be a sophisticated business term, that the bargaining tactics, and more importantly, the particular setting, all weigh in favor of a finding of procedural unconscionability under <u>Muhammad[ v. County Bank of Rehoboth Beach</u>, 189 N.J. 1 (2006)].
>
> The fact that he was told it was just an invoice he needed to sign off on also weighs against finding otherwise.

The judge noted further,

if the paper contract was not presented to plaintiff until after the funeral, plaintiff would have been in a position where he essentially had to accept the terms of [the] contract, which would indicate lack of . . . consent, especially in reviewing how the services were rendered, which would make it more of an adhesion contract.

. . . Last but not least, it would not be in the public interest to enforce an arbitration clause under these circumstances.

This appeal followed.

On appeal, defendants raise the following points for our consideration:

POINT I

THE LAW DIVISION ERRED BY NOT DISMISSING THE COMPLAINT SO THAT AN ARBITRATOR CAN DETERMINE THE VALIDITY AND ENFORCEABILITY OF THE CONTRACT CONTAINING THE ARBITRATION PROVISION. (NOT RAISED BELOW).

POINT II

THE DECISION BELOW SHOULD BE REVERSED BECAUSE THE LAW DIVISION'S FINDING THAT THE ARBITRATION PROVISION WAS PROCEDURALLY UNCONSCIONABLE WAS NOT SUPPORTED BY ADEQUATE, SUBSTANTIAL AND CREDIBLE EVIDENCE.

A. Plaintiff Failed to Carry His Burden That the Arbitration Agreement was Unconscionable.

11

>    B.    Alternatively, The Law Division
>    Should Have Permitted Limited Discovery
>    on the Conscionability Issue.

## II.

In reviewing an order on a motion to compel arbitration, the principles governing our analysis are well-established.

> We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (citing Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019)). As a result, we "need not give deference to the [legal] analysis by the trial court." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

> New Jersey has a long-standing policy favoring arbitration as a means of dispute resolution. See Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) ("Like the federal policy expressed by Congress in the FAA,[4] 'the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes.'" (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))). "Although 'arbitration [is] a favored method for resolving disputes . . . [t]hat favored status . . . is not without limits.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 23 (App. Div. 2021) (alterations in original) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., PA, 168 N.J. 124, 131-32 (2001)).

---

[4] FAA refers to the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

> "An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48 (citing Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014)). "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Ibid. (quoting Kernahan, 236 N.J. at 319).
>
> [Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (alterations in original).]

Therefore, "[t]he first step in considering plaintiff's challenge to enforcement of an arbitration requirement must be to determine whether a valid agreement exists." Martindale, 173 N.J. at 83; see also N.J.S.A. 2A:23B-6(b). In determining validity, "arbitration agreements may not be subjected to more burdensome contract formation requirements than that required for any other contractual topic." Martindale, 173 N.J. at 83. As such, "'[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA],'" Muhammad, 189 N.J. at 12 (emphasis omitted), and in New Jersey, "[i]t is well settled that courts 'may refuse to enforce contracts that are unconscionable,'" id. at 15 (quoting Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc., 273 N.J. Super. 231, 236 (App. Div. 1994)).

There are two types of unconscionability, procedural and substantive. Delta Funding Corp. v. Harris, 189 N.J. 28, 55 (2006) (Zazzali, J., concurring in part and dissenting in part) (citing Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002)). Pertinent to this appeal, procedural unconscionability includes "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," Muhammad, 189 N.J. at 15 (quoting Sitogum Holdings, Inc., 352 N.J. Super. at 564).

Terms within a contract of adhesion, "'[a] contract where one party . . . must accept or reject the contract,'" Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (alterations in original) (quoting Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 104 (1980)), "necessarily involve indicia of procedural unconscionability," Muhammad, 189 N.J. at 15 (citing Rudbart, 127 N.J. at 356). "'[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the "adhering" party to negotiate except perhaps on a few particulars.'" Ibid. (quoting Rudbart, 127 N.J. at 353). "The

determination that a contract is one of adhesion, however, 'is the beginning, not the end, of the inquiry.'" Ibid. (quoting Rudbart, 127 N.J. at 354).

As such, a contract of adhesion is not by its nature alone unenforceable. Rudbart, 127 N.J. at 354. Instead, as the Court set forth in Rudbart, courts should look to additional factors such as "[1] the subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the 'adhering' party, and [4] the public interests affected by the contract." Id. at 356. These factors "determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement." Delta Funding Corp., 189 N.J. at 40 (citations omitted). Where there are allegations of unconscionability, courts must conduct a fact-sensitive analysis. Muhammad, 189 N.J. at 15-16. But the burden of proving the defense of unconscionability is on the party challenging the enforceability of the agreement. Martindale, 173 N.J. at 91.

Defendants argue that because plaintiff challenged "the enforceability and validity of the [c]ontract as a whole," rather than specifically challenging the arbitration provision itself, under Prima Paint, 388 U.S. at 403-04, Goffe, 238 N.J. at 195, and N.J.S.A. 2A:23B-6, an arbitrator should have determined the

threshold issue of the container contract's overall validity and enforceability. We disagree.

We explained the holdings in Prima Paint and Goffe in Largoza v. FKM Real Estate Holdings, Inc., 474 N.J. Super. 61 (App. Div. 2022) as follows:

> In [Prima Paint], the United States Supreme Court, relying on the [FAA], concluded that arbitration clauses are severable from other provisions in the contracts in which they are embedded, despite general fraud in the inducement claims, unless such claims pertain to the arbitration clause specifically. Similarly, in Rent-A-Center, [West], Inc. v. Jackson, 561 U.S. 63, 72 (2010), the Court enforced a provision in an arbitration agreement delegating the question of arbitrability to the arbitrator despite a challenge to the validity of the contract as a whole.
>
> Our Supreme Court followed Prima Paint and Rent-A-Center in [Goffe], and concluded that the plaintiffs' claims were subject to an enforceable arbitration agreement. In Goffe, the plaintiffs "attack[ed] the sales contracts in their entirety, challenging their formation process and arguing that they [were], at best, unenforceable." [238 N.J.] at 195. Plaintiffs did not, however, challenge the validity of the arbitration clause specifically. Ibid. Accordingly, the Court held that "the arbitration agreement [was] severable and enforceable" and required the plaintiffs to arbitrate their claims. Id. at 216-17. Similarly, in Van Syoc v. Walter, 259 N.J. Super. 337, 339 (App. Div. 1992), we enforced an arbitration clause despite allegations of fraudulent inducement as to the contract, reasoning "[u]nless the arbitration provision itself was a product of fraud, the election should be enforced."

[Largoza, 474 N.J. Super. at 74-75 (fifth, sixth, eighth, and ninth alterations in original).]

Here, plaintiff maintains the parties entered into a binding oral agreement that did not include any arbitration provision, followed by a written agreement containing a new and unconscionable arbitration clause. Unlike Goffe, plaintiff challenges the enforceability of the arbitration provision contained in the written version of the agreement. Under such circumstances, as we stated in Knight v. Vivint Solar Developer, LLC,

> [T]he arbitrator cannot decide the validity of the [contract], unless and until the trial court initially resolves the issues of fact pertaining to the formation of the arbitration provision, and determines the parties agreed to arbitrate their claims. Absent that agreement, the arbitrator is not empowered to determine plaintiff's issues concerning the formation and execution of the [contract]. In that regard, we are unpersuaded by defendants' argument that because the arbitration agreement is contained within the [contract], which plaintiff also challenges, the arbitrator must determine its validity. In our view, that procedure puts the cart before the horse.

[465 N.J. Super. 416, 428 (App. Div. 2020).]

We acknowledge that the written contract included an integration clause stating it "replace[d] all other discussions and agreements, whether oral or written, relating to th[e] goods and services." We also note, however, that the written agreement was a contract of adhesion, presented to plaintiff for signature

17

on a take-it-or-leave-it basis, after the funeral services had already been rendered and leaving nothing for plaintiff to negotiate.

Defendants claim that without limited discovery, invalidating the arbitration provision on unconscionability grounds was not supported by adequate, substantial, and credible evidence. We agree that limited discovery is appropriate here. See Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (requiring limited discovery on the question of arbitrability when the party opposing arbitration "has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue").

Stated differently, we are convinced that the facts in the record are insufficient to permit a full and proper consideration of the Rudbart factors and a remand is appropriate to permit further discovery and factual findings on those factors. Specifically, after reviewing plaintiff's certification, questions remain regarding his level of sophistication, his capacity to review and understand the agreement, and whether he was unduly influenced by other factors. In reaching our conclusion, we recognize that generally, defendants do not dispute the circumstances leading to the agreement's execution, including the fact that the agreement was presented as an invoice for services already performed as well

as the horrendous series of events leading to Janet's final funeral service at Mount Sinai Cemetery. Nevertheless, we remain convinced that discovery limited to the issues of arbitrability and unconscionability is necessary and appropriate as critical unresolved facts relevant to unconscionability are within plaintiff's knowledge and control. Cf. Friedman v. Martinez, 242 N.J. 449, 472 (2020) (holding summary judgment is inappropriate "when discovery is incomplete and 'critical facts are peculiarly within the moving party's knowledge'" (quoting James v. Bessemer Processing Co., 155 N.J. 279, 311 (1998))).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19