<div style="border:1px solid black;">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3350-23

JENNIFER DASILVA,

    Plaintiff-Appellant,

v.

RENAISSANCE TERRACE,

    Defendant-Respondent.

_____

> Submitted December 16, 2025 – Decided February 27, 2026
>
> Before Judges Rose and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6273-22.
>
> Mazraani & Liguori LLP, attorneys for appellant (Jeffrey S. Farmer, of counsel and on the brief).
>
> Hutt Shimanowitz & Plocker PC, attorneys for respondent (David T. Ferrara, of counsel and on the brief).

PER CURIAM

    Plaintiff, Jennifer DaSilva appeals from a May 24, 2024 Law Division

order granting summary judgment in favor of her landlord, defendant, Renaissance Terrace, and dismissing plaintiff's claims for damages she claimed she suffered on the premises she rented from defendant. Having reviewed plaintiff's claims in light of applicable legal principles, we affirm.

I.

Plaintiff, at the time a licensed real estate agent in New Jersey, rented an apartment owned by defendant pursuant to a lease spanning October 1, 2019 through March 31, 2021. Plaintiff alleged she fell twice on a common walkway in February 2021, due to defendant's failure to adequately remove snow from the location.

Plaintiff vacated the premises in March 2021 and sought return of the security deposit she had provided defendant under the lease. In response, defendant provided plaintiff an itemized list of damage to the apartment purportedly caused by plaintiff, and advised funds for repairs would be withheld from plaintiff's security deposit.[1] At deposition, plaintiff claimed defendant wanted to withhold money for a missing "dryer button," a "carpet stain," and an unclean stove. Plaintiff contested the withholding of her security deposit to a

---

[1] Plaintiff did not include in her appendix the list or any correspondence between the parties.

representative of defendant. In an affidavit, plaintiff explained she and the representative agreed defendant would retain a portion of plaintiff's security deposit for damage to the carpet, and defendant would return the remaining funds—$200—to plaintiff. According to plaintiff, the representative said she would need to sign a form to memorialize their agreement.

On July 7, 2021, plaintiff signed the form, which prominently stated the term, "RELEASE," bolded in the heading. The provision stated, in relevant part:

> I release and give up any and all claims and rights, including personal injury, health problems, or damage to real or personal property, which I may have against [defendant], including but not limited to, any and all claims that have arisen, may potentially arise, are not yet aware of, and not specifically mentioned in this Release. This releases any and all claims and rights of any sort I have against [defendant], including those of which I am not aware and those not mentioned in this Release including all claims, damages, costs, and expenses. I indemnify and hold [defendant] harmless for any and all claims. Specifically, I release [defendant] from any further responsibility in regards to damages incurred whether they be personal injury, health problems, personal property, or any other loss or damage I may have suffered as a result of my residency at [the unit].

Further, the line directly above plaintiff's signature line stated: "I understand and agree to the terms of this Release." After plaintiff executed the release, defendant sent plaintiff a check for $200 pursuant to their agreement.

A-3350-23

Thereafter, plaintiff filed this action against defendant for her injuries sustained after falling on defendant's property. Defendant moved for summary judgment, and the trial court heard oral argument on May 24, 2024. Defendant argued it was entitled to summary judgment because plaintiff waived her right to sue when she signed the release. Defendant asserted there was consideration for the agreement because "[plaintiff] did receive a payment of $200" and "there was a compromise." According to defendant, plaintiff was "not uneducated" and knew what she was signing.

Plaintiff opposed summary judgment contending the release was invalid. She argued "[defendant] had no right to withhold the money" and "if she didn't sign [the release] there's no way statutorily [defendant] would be able to withhold that money." Plaintiff argued the release agreement therefore lacked consideration and was otherwise unenforceable, as agreements absolving landlords from "any claim imaginable" by tenants run "contrary to public policy."

The court then granted defendant's motion and rendered an oral decision setting forth its reasons. The court found defendant established the validity of the release. Specifically, the court found the parties exchanged consideration because defendant promised "[it] would not seek to retain the entire amount for

4

the property damages [it] had initially claimed plaintiff was responsible for," and "plaintiff agreed to release defendant from liability" in return. The court noted the release reflected further consideration because defendant agreed to relinquish its property damage claim.

The court also found mutual assent because "the terms of the contract [we]re clear and unambiguous." In particular, the court emphasized the "word release is both in bold and underlined, appearing as the first term of the contract."

The court then rejected the argument the release constituted an impermissible "exculpatory clause," which is void because it improperly "binds the tenant in that situation to future actions that are known or unknown," leaving a plaintiff without the ability "to seek recourse after." The court distinguished the release in these circumstances, finding the parties entered the agreement when plaintiff's claims were "retroactive," and it did not predate their occurrence as is the case with prohibitive prospective exculpatory clauses in leases formed at the outset of a tenancy.

The court further noted that "a consumer signing a contract, even in a situation where [the consumer] may be the . . . less sophisticated of the two, is presumed to have known what they are signing and to have read the contract in

5

its entirety." Having cited plaintiff's background as a real estate sales associate familiar with real estate contracts, the court noted this is not a situation in which disparity in the parties' sophistication impacted the validity of the agreement. The court thus refused to invalidate the release as against public policy, and enforced it to grant summary judgment in defendant's favor.

## II.

Plaintiff now appeals from the court's entry of summary judgment, reprising her arguments before the trial court. Specifically, she again argues the trial court erred in enforcing the release and granting judgment for defendant because: (1) no consideration existed; (2) the release lacked mutual assent; and (3) the provision "is akin to an exculpatory clause" which runs contrary to public policy, asserting defendant "was in an eminently superior bargaining position."

In response, defendant argues the release is enforceable as there was valid consideration when defendant promised "it would not seek to retain the entire amount it had withheld from plaintiff's security deposit" and agreed to drop its claims against plaintiff for the full monetary amount of the property damages defendant alleged plaintiff caused; mutual assent existed as plaintiff signed the release and acknowledged she understood the terms, and failing to read a contract is not a defense; and the release was not an unlawful exculpatory

6

provision because "plaintiff's injury occur[red] prior to signing the release and prior to her moving out of the premises" and is distinguishable from a purely prospective release of future claims against a landlord.

<center>III.</center>

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court." Abboud v. Nat'l Union Fire Ins., 450 N.J. Super. 400, 406 (App. Div. 2017) (citing Templo Fuento de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J.

<center>7</center>

1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Well-settled legal principles guide our review of plaintiff's claims. "Bedrock case law instructs that '[a] contract is an agreement resulting in obligation enforceable at law.'" Goldfarb v. Solimine, 245 N.J. 326, 339 (2021) (alteration in original) (quoting Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 24 (1958)). "'[T]he basic features of a contract' are 'offer, acceptance, consideration, and performance by both parties.'" Ibid. (alteration in original) (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 439 (2013)).

A necessary component of any agreement, "consideration is 'a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation.'" Sipko v. Koger, Inc., 214 N.J. 364, 380 (2013) (excess internal quotation marks omitted) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (2002)). "[N]o contract is enforceable . . . without the flow of consideration—both sides must get something out of the exchange." Bernetich, Hatzell & Pascu, LLC v. Med. Recs. Online, Inc., 445 N.J. Super. 173, 183 (App. Div. 2016) (omission in original) (internal quotation marks omitted) (quoting Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, 170 (1983)). "[C]onsideration

generally may not be furnished by fulfilling a pre-existing legal duty." Ibid.

"[A] release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." Domanske v. Rapid-Am. Corp., 330 N.J. Super. 241, 246 (App. Div. 2000) (citing Cooper v. Borough of Wenonah, 977 F. Supp. 305, 311 (D.N.J. 1997)). "It has been well-settled for at least a century and a half that consideration lies in the mutuality of releases." Minoia v. Kushner, 365 N.J. Super. 304, 312 (App. Div. 2004). "Mutual promises are sufficient consideration one for the other. They are reciprocal considerations for each other." Oscar v. Simeonidis, 352 N.J. Super. 476, 485 (App. Div. 2002) (quoting Coast Nat'l bank v. Bloom, 113 N.J.L. 597, 602 (E. & A. 1934)).

### A.

Here, as to plaintiff's consideration argument, we conclude the trial court did not err in concluding the undisputed record demonstrated the release memorialized the settlement of a security deposit dispute, with the parties each exchanging concessions and benefits. Although plaintiff claims defendant had a legal duty to return the entire security deposit, the court reasonably concluded she agreed to resolve her dispute with defendant conditioned upon defendant's returning a portion of the deposit defendant intended to withhold.

We recognize "consideration generally may not be furnished by fulfilling a pre-existing legal duty," Bernetich, Hatzell & Pascu, LLC, 445 N.J. Super. at 183, or provided to secure "forbearance required by a legal duty . . . that is neither doubtful nor the subject of honest and reasonable dispute," Oscar, 352 N.J. Super. at 487 (emphasis added) (quoting Levine v. Blumenthal, 117 N.J.L. 23, 27 (Sup. Ct. 1936)). Here, the parties agreed defendant was entitled to retain at least some portion of the security deposit, but they disputed the scope of the damage and thus the precise amount. When plaintiff accepted the $200 check from defendant, she did so to gain the benefit of settling the security deposit dispute and guaranteed return of that amount. Defendant in exchange received the benefit of plaintiff's waiving her right to sue defendant. Therefore, we reject plaintiff's argument that summary judgment was improvidently granted because the release lacked consideration as both parties "g[o]t something out of the exchange." Bernetich, Hatzell & Pascu, LLC, 445 N.J. Super. at 183 (internal quotation marks omitted) (quoting Cont'l Bank of Pa., 93 N.J. at 170).

B.

We next address and reject plaintiff's claim the release was invalid for lack of mutual assent. Fundamentally, a contract "must be the product of mutual assent, as determined under customary principles of contract law." Atalese v.

U.S. Legal Servs. Grp., 219 N.J. 430, 442 (2014) (quoting NAACP of Camden Cnty. E. v. Foule Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid. Further, "any contractual waiver of rights . . . must reflect that the parties have clearly and unambiguously agreed to those terms. . . . The parties must have full knowledge of their rights and show an interest to surrender those rights." Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425-26 (App. Div. 2020). "[W]hen a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." Walters v. YMCA, 437 N.J. Super. 111, 119-20 (App. Div. 2014) (quoting Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 305 (2010)).

In the present matter, the one-page document was crystal clear. It bore the term "RELEASE" in bold letters at the top. The unambiguous terms within the document clearly and unmistakably indicated plaintiff agreed to waive her right to sue defendant for past claims of injury or damages. There was nothing unclear in the first line of the agreement in which plaintiff pledged to "give up any and all claims and rights, including personal injury, health problems, or damage to real or personal property, which [she] may have against [defendant],

including but not limited to, any and all claims that ha[d] arisen" already. (Emphasis added). Further, the line directly above plaintiff's signature plainly stated: "I understand and agree to the terms of this release."

When plaintiff signed the release, she was presumed to understand the terms of the agreement, in this case, the language waiving "any and all claims" against defendant. She had already fallen and any alleged injury was known to her at the time she signed the release. The trial court fairly observed plaintiff, a license real estate agent, possessed the intelligence and experience to understand what she was signing. That plaintiff assented is an inexorable conclusion. As such, plaintiff's argument that the release agreement lacked mutual assent fails.

C.

Plaintiff's final claim the trial court incorrectly enforced the release because it contravened public policy and constituted an exculpatory provision imposed on a tenant by a "landlord . . . in an eminently superior bargaining position" is similarly unpersuasive. Undeniably, courts will not enforce "an exculpatory clause in which a commercial enterprise protects itself against its own negligence at the expense of a consumer, who had no bargaining power to alter the terms of the contract." Stelluti, 203 N.J. at 320-22 (surveying cases from other states striking down exculpatory clauses in lease agreements and

12

noted that each of them absolved the landlord of <u>future</u> acts). However, as the court properly determined, this is not such a case.

Plaintiff relies primarily on two cases readily distinguishable from these circumstances, <u>Kuzmiak v. Brookchester, Inc.</u>, 33 N.J. Super. 575 (App. Div. 1955) and <u>Cardona v. Eden Realty Co.</u>, 118 N.J. Super. 381 (App. Div. 1972). <u>Kuzmiak</u> involved and invalidated an exculpatory clause within a rental lease intended to absolve the landlord of liability for injuries to the tenant resulting from "steam, gas, electricity, water, rain, snow, or dampness" or "the presence of bugs, vermin or insects," as violative of public policy. <u>Kuzmiak</u>, 33 N.J. Super. at 579. There, we observed "under [then-]present housing conditions the bargaining positions of landlord and tenant in an apartment building [we]re decidedly unequal" based on the "housing shortage." <u>Id.</u> at 587. The <u>Kuzmiak</u> court relied heavily on the landlord's absolving itself of liability for ongoing and "active wrongdoing" because it would immunize "affirmative acts of negligence and violations of positive statutory duty" including breaches of a landlord's ongoing duty of care. <u>Id.</u> at 587-88.

In <u>Cardona</u>, a provision in a lease agreement waiving the landlord's liability for "any damage, loss or injury to property or person by reason of any existing future defect in the premises, including acts, omissions, negligence or

nuisance . . . of the landlord" was also deemed violative of public policy. Cardona, 118 N.J. Super. at 382. There too, the court noted the parties were in unequal bargaining positions because the tenant was unrepresented, whereas the landlord's manager was an attorney, and the provisions of the lease agreement were "oppressively for the benefit of the landlord." Id. at 383-84.

Plaintiff's release, entered to settle a return of security deposit dispute, is critically different in several respects. First, the agreement here is not embedded within a lease agreement; rather, it is a release to resolve a dispute after plaintiff's tenancy ended and she vacated the apartment. The release does not implicate the policy concerns triggered by sweeping prospective waivers of landlord liability in the lease itself, imposed at the formation and commencement of the rental agreement.

Next, plaintiff was not in an unequal bargaining position principally because this agreement was subsequent to her lease term, and she was not confronted with agreeing to the waiver provision or foregoing her ability to rent her chosen residence. Plaintiff did not blanketly waive claims arising out of her ongoing rental for events that had not yet occurred. Her rental ended, her lease terminated, and she had already fallen. Further, unlike the powerless tenants in

the cases she cites, plaintiff had other recourse that she voluntarily failed to pursue in order to secure return of some of her rental deposit.

The evil inherent in exculpatory clauses in lease agreements lies in a landlord's avoiding its ongoing statutory duty of care by capitalizing on a tenant's unequal footing, further weakened under the weight of difficult economic conditions like a housing shortage or a tenant's personal financial hardship. Kuzmiak, 33 N.J. Super. at 580. No such threat attended plaintiff's arm's length negotiation of a post-rental security deposit settlement, particularly given her knowledge of real estate matters.

Finally, there is no suggestion in the record plaintiff lacked the ability to negotiate or "alter the terms of the contract." See Stelluti, 203 N.J. at 320 ("Never before in the modern era has this Court upheld an exculpatory clause in which a commercial enterprise protects itself against its own negligence at the expense of a consumer, who had no bargaining power to alter the terms of the contract."). Plaintiff explained at her deposition she was actively "appeal[ing]" defendant's determination regarding her security deposit. No longer living on the premises or pressured by the necessity of retaining her home, nothing impeded plaintiff's options. She could have brought suit against defendant for return of the security deposit, for her claimed personal injury she alleged

resulted from defendant's failure to safely maintain the sidewalk, or both. Therefore, like the trial court, we are not persuaded the release contravened public policy because plaintiff had the ability to negotiate or simply walk away via other avenues of redress to pursue any claims she believed were viable against defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division